OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Mary K. Scott, individually and as representative of the Estate of Buster Scott, deceased, appeals the judgment of the Defiance County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees, Ann (aka Leanna) and Larry Marckel, dba "Weddings By Design." On appeal, Scott asserts that the trial court erred in finding that there were no genuine issues of material fact. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} Ann and Larry Marckel (hereinafter jointly referred to as "the Marckels") operated a part-time business providing decorations for weddings and receptions. In November 2004, they provided and set up the decorations for a wedding reception at the Ridgeville Legion Hall. One of the decorations the Marckels provided was a large, eight to nine foot tall, pillar box display that served as a backdrop for the wedding cake table. The backdrop display consisted of two tall pillars, standing about six feet apart in concrete filled flower pots, supporting a top wooden header-piece draped with floor-length curtains. Buster Scott was the grandfather of the bride, and was talking to his daughter while standing near the wedding cake table. At this time, several children were seen running and playing near the pillar box display. The display then toppled over and landed on the cake table, striking Buster as it fell. *Page 3 
 {¶ 3} In October and November 2006, Buster and Mary (hereinafter jointly referred to as "the Scotts") filed suits against the Marckels, and/or Weddings by Design, the Ridgeville Legion Hall, and/or American Legion Post 454, seeking to recover for the injuries Buster claimed he incurred as a result of the falling display and for the loss of consortium suffered by Mary. The two cases were consolidated and the suit against Ridgeville Legion Hall was voluntarily dismissed without prejudice.[1]
 {¶ 4} In March 2007, the Marckels moved for summary judgment, asserting that the Scotts had set forth no evidence that the Marckels had breached any duty owing to the Scotts. The Marckels pointed to deposition testimony and affidavits stating that the pillar box display was knocked over by unsupervised children swinging around on the pillars and that this was the sole cause of the pillar box display falling.
 {¶ 5} The Scotts filed a memorandum in opposition to summary judgment, claiming that children playing at the wedding reception was foreseeable and that this was a question for the jury to decide. The Scotts also provided an affidavit *Page 4 
from a professional engineer who stated that the instability of the structure was the proximate cause of Buster's injuries.
 {¶ 6} Before issuing its decision, the trial court reviewed the following evidence: the depositions of Ann, Larry, and Alvin Shook (the disc jockey at the wedding reception), and the affidavits of Buster, Larry, Shook, and Douglas L. Oliver, the Scott's expert witness.
 {¶ 7} Ann, in her November 2006 deposition, stated that she had provided decorations for approximately one hundred weddings over a four-year period, and for at least twenty weddings at this particular hall; that Larry helped her construct, set up, and tear down the displays; that the pillar box displays were used primarily as a backdrop to provide a nice picture setting and to highlight an area; that they have used these displays at least eighty times, often using multiple sets at a wedding; and, that at this particular wedding, the pillar box display was angled into a corner behind the cake table, near the wall, and just a few feet behind the cake table.
 {¶ 8} Larry was deposed on the same day, and stated that he designed and constructed eight to ten sets of pillar box displays that they regularly used; that the pillars were made of white, eight-inch diameter plastic drain pipe; that each pillar was permanently anchored in a large, decorative flower pot filled with fifty pounds of concrete; that the pillars supported a hollow, laminated particleboard *Page 5 
top box that was eight-and-one half feet long and one-foot high and wide; that the top box part contained lighting and curtain rods; and, that he estimated the top box weighed approximately fifty to sixty-five pounds. Larry further stated that, when he returned to the reception hall at the end of the evening, he was told that the display had fallen, but that it had not come apart; that it had been set back up again right after it fell; and, that it was not damaged in any way.
 {¶ 9} In a March 2007 affidavit, Larry further described the pillar box display, stating that the pillars were set inside a standard one and one-half foot diameter flower pot in twelve inches of concrete, and they extended eight inches into the top box, where there were cross pieces to further stabilize the cross beam and that the box set was locked in and did not move. In his affidavit, Larry stated that he had used that display, or similar ones, probably eighty to one-hundred times at other wedding receptions; and, that no display box ever fell or was inadvertently knocked over. In both his deposition and his affidavit, Larry stated that the Ridgeville Hall would not permit him to "brace" the display or secure it to the ceiling in any way.
 {¶ 10} In support of their motion for summary judgment, the Marckels submitted the affidavit of Shook, the disc jockey at the wedding reception, who stated:
 I saw Buster Scott get hit by a pillar box display there that evening. I had just gone on break and I was standing *Page 6 approximately six feet from the "Roman-Ruins" pillar box display. I saw the entire event from start to finish. Some children who appeared to be 8-10 years of age were chasing each other and one or both of these children grabbed a side pole of the pillar box and swung around. When the child did that, the entire display fell forward at a slow speed, and to my eye, the pillar box just barely grazed a man (Buster Scott) who was standing near the display. Mr. Scott was not knocked down. Mr. Scott declined treatment from people who ran up to him, stating "I'm fine."
(Shook Affidavit, ¶ 2).
 {¶ 11} In May 2007, Shook was deposed and stated that he had worked as a disc jockey for approximately twenty years, doing an average of two weddings each month; that this wedding was a fun wedding with a large crowd, and, like most weddings, had a variety of ages from young to old. He stated that he observed two or three children chasing each other around the pillar and using the pillar "to take a hold of it and spin themselves around while they were playing and chasing each other." (Shook Depo., p. 51-52). Shook further stated that "I watched the children physically knock this display over by swinging on it." (Shook Depo, p. 58).
 {¶ 12} Buster submitted photographs of the pillar box display set up behind the cake table, along with an affidavit verifying the authenticity of the photographs and the fact that it was that display that fell and injured him.
 {¶ 13} In support of their memorandum in opposition to summary judgment, the Scott's included an affidavit from Douglas L. Oliver. Dr. Oliver *Page 7 
included his resume which showed that he had a Ph.D. in mechanical engineering; that he was a professional engineer; that he worked as an associate professor; and, that he was an attorney. He stated that his investigation of the accident consisted of reviewing the depositions, photographs and documents that had been filed in this case. Dr. Oliver stated that the Marckels had not established that the inward tapering twelve-inch diameter base was sufficient for the stability of the backdrop system; that "[f]lower pots are not intended to give structural stability to tall, heavy structures"; that using a broader base would have provided more stability to the system; that the display should have been designed so that it would be highly unlikely to fall; and that "[t]he negligent design of the display at issue made the structure unreasonably dangerous because the structure was, in layman's terms, `top heavy'" and "was the proximate cause of Buster Scott's injuries." (Oliver Affidavit, pp. 2-3).
 {¶ 14} In November 2007, the trial court granted the Marckels' motion for summary judgment and dismissed the case finding that the evidentiary materials before the court did not create a genuine issue of material fact that the Marckels knew, or should have known, that the pillar box display created a dangerous or hazardous condition under the circumstances. *Page 8 
 {¶ 15} It is from this judgment that the Scotts filed their notice of appeal on December 12, 2007. On December 29, 2007, Buster Scott died.[2] Shortly thereafter, Plaintiffs/Appellants filed a Suggestion of Death and a Motion to Substitute Party. In February 2008, the trial court granted the motion and ordered Mary, Administrator of the Estate of Buster Scott, substituted as the party plaintiff for Buster. This appeal presents the following assignment of error for our review.
THE TRIAL COURT ERRED BY GRANTING DEFENDANT/ APPELLEE'S [sic] MOTIONFOR SUMMARY JUDGMENT.
 {¶ 16} Mary argues that the trial court erred in granting the Marckels' motion for summary judgment because it was foreseeable that children would be playing at a wedding reception; that a genuine issue of material fact was created by Dr. Oliver's affidavit stating that the Marckels were negligent in the construction of the display; and, that there were inconsistencies in the affidavits and depositions which would preclude summary judgment. We disagree.
 Standard of Review {¶ 17} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis *Page 9 
for its determination. Diamond Wine Spirits, Inc. v. Dayton HeidelbergDistr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 25, citingState ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.,69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issues of material fact remain to be litigated; (2) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party, and (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C); Horton v. HarwickChemical Corp., 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.
 {¶ 18} The party moving for summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. Athens CityClerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id. In order to defeat summary judgment, the nonmoving party must produce evidence beyond allegations set forth in the *Page 10 
pleadings and beyond conclusory statements in an affidavit. Gans v.Express-Med, Inc. (2001), 10th Dist. No. 00AP-548, 2001 WL 214094.
 Negligence Standard {¶ 19} It is well-settled that in a negligence suit between private parties, the plaintiff must prove (1) the existence of a legal duty, (2) the defendant's breach of that duty, and, (3) that the breach was the proximate cause of harm and damages. Nationwide Mut. Ins. Co. v. Am.Heritage Homes Corp., 167 Ohio App.3d 99, 2006-Ohio-2789, ¶ 12. "The existence of duty in a negligence action is a question of law,"Mussivand v. David (1989), 45 Ohio St.3d at 314, 318, and depends on the foreseeability of the injury. Huston v. Konieczny (1990),52 Ohio St.3d 214, 218. Injury is foreseeable if a defendant knew or should have known his actions were likely to result in harm. Id. Furthermore, negligent conduct is the proximate cause of injury if the injury is the natural and probable consequence of the conduct, that is, if it was foreseeable.State Farm Mut. Auto. Ins. Co. v. VanHoessen (1996),114 Ohio App.3d 108, 111. "The lack of foreseeability negates both the existence of an underlying duty and the element of proximate cause necessary to establish a prima facie case of negligence." Stepanyan v. Kuperman, 8th Dist. No. 88927, 2007-Ohio-4068, ¶ 7. *Page 11 
 Analysis {¶ 20} Mary argues that it was foreseeable that wedding receptions often take place in a darkened room with large crowds, alcoholic beverages, loud music, and children running around, and therefore, the display should have been designed and constructed so that "the slightest bump" would not cause it to fall over.
 {¶ 21} We agree that it was foreseeable that there would be crowds and perhaps children running around at weddings, and that displays and furnishings might be inadvertently bumped and jostled. However, in this case, Mary did not present any evidence that the display fell down after receiving "the slightest bump." In their motion, the Marckels pointed to the uncontroverted sworn statements of the eye-witness to the accident, Shook, who clearly stated that at least one child, if not more, grabbed and spun around and around on the pillar and physically knocked it down. Even with all this forceful activity, Shook explained that the display still did not fall right away, but only started to rock back and forth before it finally slowly fell.
 {¶ 22} The Marckels had used displays just like this at eighty to one hundred weddings in the past, where they were likely subjected to similar crowds and children running around, and yet not one had ever fallen before, even when they were sometimes used in close proximity to crowds on the dance floor. The Marckels had no reason to believe that their display was in any way unstable. *Page 12 
 {¶ 23} The display was weighted down with approximately one-hundred pounds of concrete, and set up close to the wall, in a corner behind the wedding cake table. It had been used on numerous occasions before, under similar conditions, without any incidents. We do not find that it was reasonably foreseeable that children would purposely misuse the pillar box display in this manner and cause it to fall.
 Expert Affidavit {¶ 24} Mary further contends that summary judgment should not have been granted because Dr. Oliver's affidavit created a genuine issue of material fact. We find that Dr. Oliver's conclusory allegations were not sufficient to overcome the motion for summary judgment.
 {¶ 25} "[I]t is improper for an expert's affidavit to set forth conclusory statements and legal conclusions without sufficient supporting facts." Wall v. Firelands Radiology, Inc. (1995),106 Ohio App.3d 313, 335-336, Evid. R. 705. A court may correctly disregard legal conclusions contained in an expert's summary judgment affidavits.Mitchell v. Norwalk Area Health Serv., 6th Dist. No. H-05-002,2005-Ohio-5261, ¶ 61.
 {¶ 26} Generally, Evid. R. 702 governs the admissibility of expert testimony and provides, in pertinent part:
 A witness may testify as an expert if all of the following apply: *Page 13 
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information.* * *
The party seeking to admit expert testimony bears the burden of establishing the witness' qualifications. State v. Wegmann, 3d Dist. No. 1-06-98, 2008-Ohio-622, ¶ 44; Crawford v. Crawford, 3d Dist. No. 14-06-42, 2007-Ohio-3139, ¶ 55.
 {¶ 27} In determining whether an expert's testimony is reliable, courts must focus their inquiry "on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." Miller v. Bike Athletic Co., 80 Ohio St.3d 607,1998-Ohio-178, at paragraph one of the syllabus (adopting standard and factors set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc.
(1993), 509 U.S. 579). Additionally, to be admissible, the expert testimony must also assist the trier of fact in determining a fact issue or understanding the evidence. Miller, 80 Ohio St.3d at 611 (citations omitted).
 {¶ 28} Although several factors should be considered in evaluating the reliability of scientific evidence, the inquiry remains flexible. Id. at 611-613. The "`ultimate touchstone is helpfulness to the trier of fact, and with regard to *Page 14 
reliability, helpfulness turns on whether the expert's technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.'" Id. at 614, quoting DeLuca v. Merrell DowPharmaceuticals, Inc. (C.A.3, 1990), 911 F.2d 941, 956, (citation omitted).
 {¶ 29} Dr. Oliver based his affidavit solely upon his review of the depositions, affidavits, and pleadings. He did not personally see the pillar box display, nor did he conduct any experiments or tests or submit any type of scientific report. Dr. Oliver did not state how he arrived at his conclusions or what scientific methodology he used to form his opinions. He did not set forth any standards against which we could judge or measure the performance of the display in question. Dr. Oliver stated that the base of the display should have been "broader," but he did not provide any calculations or specify how broad it should have been. He claimed that the display was, "in layman's terms," top-heavy, but did not provide any diagrams or scientific measurements to inform us as to what may have provided increased stability. Dr. Oliver did not provide any evidence concerning how much or how little force would be necessary to knock down the display or cause it to fall over.
 {¶ 30} In summary, we did not find that Dr. Oliver's conclusory statements were based upon any scientific, technical or other specialized information that was beyond the knowledge or experience of lay persons. His affidavit left open more *Page 15 
questions than it answered and would not be helpful to the trier of fact. Unsupported, conclusory statements and legal conclusions do not provide sufficient evidence to overcome a motion for summary judgment.
 Alleged Inconsistencies {¶ 31} Finally, Mary complains that the affidavits and depositions contained inconsistencies which would preclude summary judgment. We did not find that there were any inconsistencies of material fact that would affect the final outcome. The few inconsistencies that Mary raised did not affect the credibility of the witnesses, but merely reflected minor uncertainties that could occur when a witness is questioned about events that happened more than two years earlier. In any case, even if there were minor discrepancies, we interpreted the facts in the manner most favorable to Mary.
 {¶ 32} Mary has not met her burden of pointing to any specific facts showing the existence of a genuine triable issue. Accordingly, we overrule her sole assignment of error.
 {¶ 33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J. and WILLAMOWSKI, J., concur.
[1] Case Number 06-CV-38133, filed in October 2006, and Case Number 06-CV-38231, filed in November 2006, were consolidated in December 2006 using Case Number 06-CV-38133. There were also several unnamed "John Does" (children and their parents who attended the wedding) named as defendants in Case No. 06-CV-38231, who were never served. In December 2006, the Ridgeville Legion Hall and American Legion Post 454 (whose correct name is Ward L. Adams Post 454 of the American Legion) filed a third party complaint against Kaycie Deming, nka Kaycie Wachtman, who was the bride and person who contracted with the Ridgeville Legion Hall for the reception. The third party plaintiffs dismissed this third party complaint without prejudice in April 2007.
[2] There is no indication in the record that Buster Scott's death was related to injuries received in this incident. *Page 1