[Cite as *Crossman v. Smith Clinic*, 2010-Ohio-3552.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

JAMIE CROSSMAN,                                    CASE NO. 9-10-10

   PLAINTIFF-APPELLANT,

 v.

SMITH CLINIC, ET AL.                               O P I N I O N

   DEFENDANTS-APPELLEES,

Appeal from Marion County Common Pleas Court
Trial Court No. 09CV0060

Judgment Affirmed

Date of Decision:  August 2, 2010

APPEARANCES:

   *Dennis A. Schulze,* for Appellant

   *Richard J. Silk,* for Appellee, Smith Clinic

**WILLAMOWSKI, P.J.,**

{¶1}  Although this appeal has been placed on the accelerated calendar, this court elects to issue a full opinion pursuant to Loc.R. 12(5).

{¶2}  Plaintiff-Appellant, Jamie Crossman ("Crossman" or "Mrs. Crossman"), appeals the judgment of the Marion County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Smith Clinic ("Smith Clinic" or "the Clinic"), on Crossman's claim of injury resulting from a fall in the Clinic's parking lot, allegedly caused by snow covering a drainage depression.  On appeal, Crossman contends the trial court erred in granting summary judgment because it applied the standard of "unnatural accumulation" rather than "improper accumulation," and that it failed to construe the facts in her favor.  For the reasons set forth below, the judgment is affirmed.

{¶3}  This case concerns a fall that occurred on January 23, 2007, in the parking lot of Smith Clinic.  According to Crossman, she fell as a result of unevenness (a drainage depression next to the curb) in the parking lot, which may have been covered with snow.  On the day of the accident, Crossman and her husband were taking their daughter to the Clinic for her weekly physical therapy.  Mr. Crossman was driving and parallel parked next to the curb so that Mrs. Crossman, who was in the passenger seat, could exit the vehicle onto the curb.  Mrs. Crossman got out of the vehicle, took a few steps, and went to step onto the

curb when she claims she stepped into a storm drain depression that was covered with snow, causing her to fall to the ground and strike her knee on a manhole cover.

{¶4} On January 23, 2009, Crossman filed a complaint against Smith Clinic and The City of Marion; the trial court subsequently granted the city's motion to dismiss. After an opportunity for depositions and discovery, Smith Clinic filed a motion for summary judgment.[1]

{¶5} On January 13, 2010, the trial court granted Smith Clinic's motion for summary judgment, holding that Crossman failed to demonstrate: (1) that the snow in the drainage depression was substantially more dangerous than naturally occurring snow; (2) that Smith Clinic had superior knowledge of the alleged defect; (3) that anyone acting on behalf of Smith Clinic had plowed the parking lot; or (4) that the plowing was done negligently.

{¶6} Crossman now appeals from this decision, claiming that the trial court erred in granting summary judgment in favor of Smith Clinic and raising the following two assignments of error for our review:

**First Assignment of Error**

**The trial court erred by applying the law of unnatural accumulation rather than the law of improper accumulation.**

---

[1] There were issues with Crossman failing to file the deposition transcript, and the parties' motions, responses, and replies were filed and re-filed. However, these procedural issues are not relevant to the issues before this Court.

## Second Assignment of Error

**The trial court committed error prejudicial to [Crossman], by failing to view the evidence most favorably to [Crossman].**

{¶7} Pursuant to Civ.R. 56(C), summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. As such, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286, 653 N.E.2d 1196. An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108.

{¶8} In order to establish a cause of action for negligence, a plaintiff must establish each of the essential elements: (1) the existence of a duty; (2) a breach of that duty; and (3) an injury, proximately resulting therefrom. *Armstrong v. Best*

*Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶8. It is undisputed that Crossman was a business invitee at the time of her fall. Generally, a business owner like Smith Clinic owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition, and to warn its invitees of latent or hidden dangers of which it is or should be aware. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 203, 480 N.E.2d 474 (citation omitted). The mere occurrence of an injury to a business invitee does not give rise to a presumption or an inference of negligence. *Parras v. Std. Oil Co.* (1953), 160 Ohio St. 315, 116 N.E.2d 300, paragraph one of the syllabus. An owner or occupier of a premise is not an insurer of a business invitee's safety. *Paschal*, 18 Ohio St.3d at 203.

{¶9} Accordingly, the Ohio Supreme Court has held that "[g]enerally, no liability exists for minor imperfections in the surface of such a parking area -- those slight irregularities reasonably to be anticipated in any traveled surface." *Neumeier v. City of Lima*, 3d Dist. No. 1-05-23, 2005-Ohio-5376, ¶14, quoting *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 239 N.E.2d 37, paragraph two of the syllabus. See, also, *Sack v. Skyline Chili, Inc.*, 12th Dist. No. CA2002-09-101, 2003-Ohio-2226 (holding that a sewer grate sunk three inches into the surface of a parking lot was a minor imperfection).

{¶10} Furthermore, a business owner's duty to business invitees does not extend to hazards from natural accumulations of ice and snow. *Tyrrell v. Investment Assoc., Inc.* (1984), 16 Ohio Ap.3d 47, 49, 474 N.E.2d 621. "[I]t is well established that an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow." *Brinkman v. Ross*, 68 Ohio St.3d 82, 83, 1993-Ohio-72, 623 N.E.2d 1175.

{¶11} However, an exception to the general "no-duty" winter snow rule is where the land owner or occupier is shown to have actual or implied notice "that the natural accumulation of snow and ice on his premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area[.]" *Burckholter v. Dentistry For You*, 3d Dist. No. 10-08-21, 2009-Ohio-1654, ¶17, quoting *Debie v. Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St.2d 38, 227 N.E.2d 603, at paragraph one of the syllabus. In order to be liable, the land owner or occupier must have superior knowledge of the existing danger. *LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209, 210, 503 N.E.2d 159.

{¶12} A second exception to the general rule exists where the owner or occupier of land is actively negligent in permitting or causing an unnatural

accumulation of ice or snow. *Norton v. Marion Gen. Hosp.*, 3d Dist. No. 9-06-04, 2006-Ohio-3535, ¶10, citing *Lopatkovich v. City of Tiffin* (1986), 28 Ohio St.3d 204, 207, N.E.2d 154. Essentially, a natural accumulation of ice and snow is one which accumulates as a result of an act of nature, whereas an unnatural accumulation is one that results from an act of a person. *Porter v. Miller* (1983), 13 Ohio App.3d 93, 95, 468 N.E.2d 134.

{¶13} "In cases involving an unnatural accumulation of ice and snow, a plaintiff must show that the defendant created or aggravated the hazard, that the defendant knew or should have known of the hazard, and that the hazardous condition was substantially more dangerous than it would have been in the natural state." *Myers v. Forest City Ent., Inc.* (1993), 92 Ohio App.3d 351, 353-54, 635 N.E.2d 1268 (citations omitted). It would appear that Crossman's claim would involve a liability analysis involving an unnatural accumulation of ice and snow, as she complains that the Clinic negligently plowed the parking lot, piling snow over the drainage depression and/or crumbling blacktop, thereby hiding the depression/drain and creating a hazard more dangerous than it would have been in the natural state.

{¶14} However, in her first assignment of error, Crossman contends that the trial court erred by applying the law of "unnatural accumulation" rather than the law of "improper accumulation," as mentioned in *Mikula v. Slavin Tailors*

(1970), 24 Ohio St.2d 48, 263 N.E.2d 316, and a handful of subsequent cases. In the *Mikula* case, a natural accumulation of snow covered a seven-inch deep hole in a parking lot and constituted an improper accumulation by concealing the defect. Id.

{¶15} We find Crossman's argument unpersuasive for several reasons. First, the cases referencing an "improper accumulation" are instances where a *natural* accumulation of snowfall hid or covered a hazardous condition about which the property owner knew or should have known. See id, at paragraph six of the syllabus ("an 'improper accumulation,' *which is equivalent to natural accumulation* of ice and snow which creates a condition substantially more dangerous than the invitee should reasonably have anticipated from his knowledge of weather conditions prevailing generally in the area" (Emphasis added.); *Longenberger v. Collins Food* (1977), 52 Ohio App.2d 105, 368 N.E.2d 85 (the entire area was covered with substantial snow which concealed an abrupt steep change in grade); *Miller v. Biskind Dev. Corp.*, 8th Dist. No. 53470, 1988 WL 18818 (a natural accumulation of snow covered an eight-inch high concrete barrier). Whereas, in the case before us, Crossman complains that the drainage depression was not visible "due to the snow removal procedures of Smith Clinic," not a natural accumulation as in *Mikula*. (Appellant's Complaint.)

{¶16} Also, the concealed hazards in the above cited cases were fairly significant (i.e., a seven-inch deep hole, an eight-inch high concrete island), and were not the type of changes in grade that a business invitee might readily expect to encounter. In this case, the drain was a typical and common curb drain, with an opening in the *side/underside* of the curb, with a slightly sloping surface in front of the drain to allow the water to flow into the opening.

{¶17} And finally, although it is true the Ohio Supreme Court in *Mikula*, supra, references "improper accumulation" in the context of snow in a parking lot, it did so with respect to whether instructions to the jury in that case were proper. The negligence analysis would be the same as for an unnatural accumulation.

{¶18} Crossman's claim did not fail because the trial court utilized the wrong standard; it failed because Crossman did not present any evidence to establish any of the elements of her claim other than her own unsupported allegations. Crossman's testimony indicated she wasn't completely sure what caused her fall; she failed to establish the duty element of her claim; the snow and existence of the curb were open and obvious hazards, of which Crossman was aware; she failed to establish that the drainage depression was significantly dangerous; she failed to establish that Smith Clinic had superior knowledge of the conditions in the parking lot; and she did not establish that the parking lot was negligently plowed. Crossman's first assignment of error is overruled.

{¶19} In her second assignment of error, Crossman claims that the trial court erred by failing to view the evidence in her favor. She claims that there are three specific "facts" that should have been construed in her favor, precluding summary judgment in favor of Smith Clinic. Those three "facts" are: 1) that the Smith Clinic had superior knowledge of the defect; 2) that someone acting on behalf of Smith Clinic plowed the parking lot; and 3) that the plowing was done negligently.

{¶20} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 1996-Ohio-107. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ.R. 56(C). *Mitseff v. Wheeler* (1988), 38 Ohio St .3d 112, 115, 526 N.E.2d 798. Once the moving party meets its initial burden, the nonmoving party must then produce competent Civ.R. 56(C) evidence demonstrating that there is a genuine, material issue for trial. *Dresher* at 293. In order to defeat summary judgment, the nonmoving party must produce evidence beyond allegations set forth in the pleadings and beyond conclusory statements in an affidavit. *Scott v. Marckel*, 3d Dist. No. 4-07-27, 2008-Ohio-2743, ¶18.

{¶21} Although the court is not to engage in weighing of the evidence, to survive summary judgment an appellant must produce more than a scintilla of evidence in support of his or her position. *Schmitz v. Bob Evans Farms, Inc.* (1997), 120 Ohio App.3d 264, 268, 697 N.E.2d 1037. Where the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden of proof, summary judgment is appropriate. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265, 274.

{¶22} The only summary judgment evidence that was submitted was Crossman's deposition testimony, along with some photographs of the curb drain area that were taken during the summer of 2007, many months after Crossman's fall. Crossman did not take the deposition of anyone affiliated with Smith Clinic nor of anyone who had responsibility for maintaining or plowing the parking lot. She did not proffer any expert's opinion or affidavits.

{¶23} First, Crossman maintains that the trial court should have found that she established that the Clinic had superior knowledge of the "alleged defect." Crossman presented photographs of the curb drain, showing a depression where the blacktop enters the drain, however we do not find any evidence on the record that this was a "defective" drain. Crossman claims this depression was deeper than the other drains, but she does not present any contrasting measurements or photos of other drains to substantiate her claim, nor does she present any evidence

of what constitutes a reasonable drainage depression or how much of a deviation from a standard would be considered dangerous. Although the blacktop directly in front of the drain opening is slightly lower than the surrounding area, such a slope is typical and necessary to allow the water to flow properly into the drain. Other than her conclusory statement that this particular drainage depression was deeper than other drainage depressions, there is no evidence confirming this allegation.

{¶24} Crossman also complains that the blacktop around this drain was "crumbling," although she is not certain if the fall was caused by the drain's depression or the crumbling. The photographs show a slight cracking of the very top surface layer of the blacktop. However, this does not appear to be a significant "crumbling"; there is no evidence that this created any danger; and there is no evidence that the surface was in this condition at the time of the fall, many months earlier.

{¶25} Furthermore, both the drainage slope and the surface crumbling do not appear to constitute substantial defects beyond what one might ordinarily expect to find in a parking lot. "[A]lmost every parking lot provides a spawning ground for defects in the blacktop, in the absence of any substantial defect or any unusual attending circumstances, the trial court cannot be faulted for deciding the case as a matter of law." *Neumeier v. City of Lim*a, supra, at ¶16, quoting *Krause v. Fred W. Albrecht Grocery Co*., 8th Dist. No. 74468, 1999 WL 462357. Parking

lots can develop depressions from freezing and thawing and may also contain drainage areas and sewer lids. Id. In another case involving a parking lot fall near a sewer, this Court stated:

> **Looking at the deposition testimony and the photographic evidence in the record, we cannot say that the sewer grate and the area surrounding the grate was more than a "minor imperfection" in the surface of the parking lot. It is true that the sewer grate is sunken and that the surrounding area is in slight disrepair, but as a matter of law, we do not find that it rises to the level of a "substantial defect." It is certainly the kind of irregularity one may expect to encounter in a parking lot. Furthermore, there is no evidence in the record of any unusual attending circumstances that may have rendered the minor imperfection actionable.**

*Neumeier*, at ¶17.

{¶26} And, even if Crossman had submitted evidence that the drain was defective, she did not present any evidence that Smith Clinic was aware of any such dangerous condition. Crossman stated that "one may infer" that the employees of the Clinic regularly entered into the parking lot, but there was no testimony from any of the employees or evidence as to where they parked and entered the building. Furthermore, Crossman visited the Clinic weekly and regularly entered into the parking lot, so there is no evidence that anyone affiliated with the Clinic would have had knowledge superior to that of Crossman.

{¶27} Crossman further contends that the trial court erred in not construing the "facts" regarding the plowing of the Clinic parking lot in her favor and in not

construing the "facts" concerning negligence of the Clinic in plowing the parking lot in her favor. Again, the record is completely devoid of any such facts. Even Crossman changes her theory back and forth from "the law of improper accumulation [which] does not require any finding that the snow in question was plowed" to claims that the "Clinic's agent piled the snow on top of the depression" and the "snow plower should have been watching where he placed the snow to avoid covering up the storm drain." (Appellant's Brief, p. 11.)

{¶28} There is no evidence in the record as to who was responsible for maintaining and plowing the parking lot; whether the parking lot had been plowed; when the parking lot was last plowed; who plowed the lot; or when it had last snowed. Some courts have held that a plaintiff cannot establish improper plowing methods without the presentation of expert testimony. See, e.g., *Edvon v. Lyons*, 8th Dist. No. 83712, 2004-Ohio-5597, ¶20; *Rampersaud v. Madison Dev. Co.*, 9th Dist. No. 97CA006768, 1998 WL 332956; *Bittinger v. Klotzman* (1996), 113 Ohio App.3d 847, 682 N.E.2d 688. Even if we were to assume that the lot had been plowed, Crossman did not present any evidence, expert or otherwise, concerning whether the lot was improperly or negligently plowed according to standards appropriate for plowing commercial parking lots.

{¶29} Unsupported allegations are not sufficient to create an issue of fact to necessitate the denial of summary judgment. *Reprogle v. The Pub, Inc.*, 3d

Dist. 17-02-21, 2002-Ohio-4940, ¶11. "The principal function of summary judgment is to move beyond mere allegations and to analyze the *evidence* to ascertain whether an actual need for trial exists." (Emphasis in original.) Id. In this case, there was no evidence beyond Crossman's unsupported allegations and presumptions to create a material issue of fact concerning any of the elements of negligence that Crossman would have the burden of proving at trial. Crossman's second assignment of error is overruled.

{¶30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jnc**