# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 40

David Papenhausen,                                               Plaintiff

     v.

ConocoPhillips Company, and Burlington
Resources Oil & Gas Company LP, individually,
and d/b/a Burlington Resources Oil & Gas LP,           Defendants

## No. 20230280

Certified Questions of Law from the United States District Court for the District of North Dakota, the Honorable Clare R. Hochhalter, Magistrate Judge.

CERTIFIED QUESTIONS ANSWERED.

Opinion of the Court by Tufte, Justice.

Jeffrey S. Weikum (argued), Bismarck, North Dakota, and Justin L. Williams (on brief), Corpus Christi, Texas, for plaintiff.

Jack E. Zuger (argued) and Samuel H.J. Schultz (appeared), St. Paul, Minnesota, for defendants.

# Papenhausen v. ConocoPhillips Co.
## No. 20230280

**Tufte, Justice.**

[¶1]  The United States District Court for the District of North Dakota has certified two questions to this Court regarding North Dakota's natural accumulation rule, which precludes liability for injuries caused by natural accumulations of snow and ice. The questions ask whether the accumulation rule extends to an oil well site in a rural area, and, if so, does it still apply if it conceals a condition substantially more dangerous than one normally associated with ice and snow.

[¶2]  We answer the first question, "yes." The natural accumulation rule applies to an oil well site in a rural area like the area where Papenhausen was injured. We answer the second question, "no." The concealment aspect of snow and ice is outside the scope of our natural accumulation rule.

I

[¶3]  Plaintiff Papenhausen was injured when his foot fell through a hole concealed by a layer of ice and snow located on a remote well site owned and operated by Defendants ConocoPhillips Company and Burlington Resources Oil & Gas Company LP ("Defendants") in rural Dunn County, North Dakota. Papenhausen sued the Defendants, asserting claims of negligence and premises liability under North Dakota law.

[¶4]  Papenhausen alleges the cause of the injury was an unreasonably dangerous hole concealed by ice and snow and created by the Defendants' negligent maintenance of the well site. Defendants allege the injury would not have occurred but for the natural accumulation of ice and snow, irrespective of the hole, arguing the natural accumulation rule applies and precludes them from liability. Defendants rely on Papenhausen's deposition testimony: "The snow and ice apparently was covering a void under there and that's where my foot went through. If the snow and ice hadn't been there, I would have seen it." Papenhausen argues the natural accumulation rule does not extend to "remote

1

areas of property" and also should not apply here because the ice and snow concealed a dangerous condition.

## II

[¶5] As a threshold matter, this Court must decide whether to answer the certified questions. Under N.D.R.App.P. 47, this Court may answer a question of law certified by a foreign court if the question could be determinative of the proceeding and no controlling precedent exists. *See Blasi v. Bruin E&P Partners, LLC*, 2021 ND 86, ¶ 6, 959 N.W.2d 872. This is less stringent than the standard for questions certified by a state district court, which requires the question be determinative. *See* N.D.R.App.P. 47.1. Unlike cases in state court where the parties have a right to appeal, declining a question certified by a foreign court "leave[s] that court to speculate upon unsettled issues of North Dakota law, and the parties have no recourse in the appellate courts of this State." *Mosser v. Denbury Res., Inc.*, 2017 ND 169, ¶ 9, 898 N.W.2d 406 (quoting *Bornsen v. Pragotrade, LLC*, 2011 ND 183, ¶ 7, 804 N.W.2d 55).

[¶6] The federal court asserted these questions involve an issue with "no controlling precedent in the decisions of the supreme court of this state." N.D.R.App.P. 47(a)(2). The federal court further stated the application of the natural accumulation rule to remote rural areas of property "may be determinative" for resolution of this litigation. N.D.R.App.P. 47(a)(1). The court cites several of our cases concerning the natural accumulation rule, but none address rural well sites. The court further provides an Ohio case wherein Ohio adopts an exception to the natural accumulation rule for "a condition substantially more dangerous than that normally associated with snow."

[¶7] We agree controlling precedent does not exist for application of the natural accumulation rule to remote well sites—especially considering that *Makeeff v. City of Bismarck*, 2005 ND 60, 693 N.W.2d 639, did not reach a majority holding. We further agree North Dakota has not addressed how to apply the natural accumulation rule if the snow or ice conceals a separate danger unrelated to snow and ice. The application of the natural accumulation rule, and possible exception for a separate danger, may be determinative in

2

this case. The requirements of N.D.R.App.P. 47 are satisfied, and we exercise our discretion to answer the certified questions.

## III

[¶8] Generally, "[l]andowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition under the circumstances, considering the likelihood of an injury to another, the seriousness of the injury, and the burden of avoiding the risk." *Green,* 2004 ND 12, ¶ 8. "If a landowner permits dangerous conditions to exist on the premises the landowner must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen." *Fast v. State*, 2004 ND 111, ¶ 8, 680 N.W.2d 265 (citing *Groleau v. Bjornson Oil Co., Inc.*, 2004 ND 55, ¶ 16, 676 N.W.2d 763). "The open and obvious nature of a danger may obviate the need to warn of danger." *Wotzka v. Minndakota Ltd. P'ship*, 2013 ND 99, ¶ 23, 831 N.W.2d 722 (citation omitted). "A duty to warn does not exist when the risk is commonly known, already understood and appreciated, or obvious." *Id.* (citing 57A Am. Jur. 2d *Negligence* § 388 (1989)).

[¶9] Under the natural accumulation rule a landowner has no duty to remove, and is not liable for injuries caused by, natural accumulations of snow and ice, or to warn of the dangers associated with the same. 3 Premises Liability 3d § 52:1 (2023 ed.). We have adopted the natural accumulation rule, holding "[t]he mere fact there is snow and ice upon a person's sidewalk, does not establish negligence by that party." *Green v. Mid Dakota Clinic,* 2004 ND 12, ¶ 8, 673 N.W.2d 257 (citing *Skjervem v. Minot State Univ.,* 2003 ND 52, ¶ 10, 658 N.W.2d 750); *see also Clark v. Stoudt*, 73 N.D. 165, 173, 12 N.W.2d 708 (1944) (explaining a rule that meets with our approval is: "Owners and occupants of property are not liable to a pedestrian for injuries resulting from a fall caused by slipping on snow and ice which, due to natural weather conditions, accumulated on the sidewalk in front of the property, notwithstanding an ordinance penalizing failure to remove such snow and ice."); *but see Strandness v. Montgomery Ward,* 199 N.W.2d 690, 692 (N.D. 1972) (as an exception to the rule, a landowner who constructs a canopy over a

3

sidewalk upon his property owes a duty to the public to maintain it to provide a sidewalk free from artificial accumulations of water and ice).

[¶10] The natural accumulation rule relates to the threshold question whether a duty exists. *See Gunville v. United States,* 985 F. Supp. 2d 1101, 1108 (D.S.D. 2013) ("The natural accumulation rule concerns the threshold question of whether the defendant owes a plaintiff a legal duty to clear natural accumulations of ice and snow."). The natural accumulation rule exists because, as a matter of law, it is not reasonable to impose premises liability for dangers caused by natural accumulation of ice and snow. *See* 62A Am. Jur. 2d Premises Liability § 625 ("To require that an owner's or occupier's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in certain areas."). The underlying rationale for the natural accumulation rule is reasonableness.

[¶11] Our consideration of the natural accumulation rule dates back to *Jackson v. City of Grand Forks*, 24 N.D. 601, 140 N.W. 718, 723 (1913):

> [L]iability should be based upon negligence and upon what is reasonable under the circumstances, paying attention to the climatic conditions. What would be reasonable, for instance, in southern Illinois might not be reasonable in North Dakota or Montana; but reasonableness, and a reasonable regard for public safety, should be the criterion. The municipality under this rule is bound merely to exercise reasonable care and diligence to render the sidewalks safe. Where the sidewalk is properly constructed, the mere fact that it is rendered slippery by the presence of ice and snow will not in itself render the city liable for resulting injuries. Where, however, snow or ice is suffered to remain for a long time until it forms into mounds or ridges, and becomes itself an obstruction as it were to the sidewalk, or on account of its depth and quantity, a mass which in every thaw may be trampled into deep ruts and ridges which in the night following or in a close succeeding freeze may become dangerous and an occasion for further obstruction, the municipality may be held liable. It will be held liable, if not for the accumulation, then for not using reasonable means, such as scattering sand, gravel, or ashes to prevent the danger.

In *Fast*, 2004 ND 111, ¶ 12, we explained, "We need not decide whether the snow and ice accumulation in this case was natural or artificial because, given the climate in North Dakota, it would be unreasonable and unduly burdensome to hold the State liable without some further act or omission on its part creating an unreasonably dangerous condition."

[¶12] Papenhausen argues this Court abandoned the natural accumulation rule and adopted a reasonableness standard in *Makeeff v. City of Bismarck*, 2005 ND 60, 693 N.W.2d 639. Contrary to Papenhausen's assertion, *Makeeff* did not abrogate the natural accumulation rule as we described it in *Fast*, 2004 ND 111.

[¶13] First, only four justices participated in *Makeeff*. The lead opinion by Justice Sandstrom was joined only by Justice Maring. No rationale was joined by a majority of the court. Chief Justice VandeWalle, joined by Justice Kapsner, concurred only in the result, explaining: "It is not clear to me whether the majority intends to overrule our previous cases such as *Fast* and the other North Dakota cases cited and relied upon therein and to reject the 'natural accumulation rule' or whether it intends to carve out a different standard where stairs attached to a public building, not sidewalks, are concerned." 2005 ND 60, ¶ 32. Therefore, a majority rationale for the result in *Makeeff* was not reached. *See State v. Orr*, 375 N.W.2d 171, 175 (N.D. 1985) (citing the *Marks* rule). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [a majority of justices], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Id.* (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).

[¶14] Next, *Makeeff*, 2005 ND 60, examines only whether the natural accumulation rule extends to stairways attached to a City building. Makeeff was injured when she was leaving a public event at the Bismarck Civic Center, and she slipped on a patch of ice on an "outside stairway leading out of the Civic Center." *Makeeff*, at ¶ 2. The City, relying on *Fast,* 2004 ND 111, ¶ 12, argued the case was analogous to slip-and-fall cases that occur on sidewalks, where "a party is not liable for slippery conditions caused by snow and ice on a

sidewalk, absent some act or omission creating an unreasonably dangerous condition." *Makeeff*, at ¶ 15. We recognized, the "mere fact there is snow and ice upon a person's sidewalk, does not establish negligence by that party." *Green,* 2004 ND 12, ¶ 8. We have said, however, "*there may be instances* where the State could be liable for injuries sustained as a result of a slip and fall on snow or ice." *Fast,* at ¶ 12 (emphasis added). The *Makeeff* court viewed "[s]tairs next to or attached to a building" as one of those instances. 2005 ND 60, ¶ 17 (rejecting the jurisdictions that apply the natural accumulation rule to stairs connected to buildings and adopting the rationale of the jurisdictions which exclude stairs attached to a building from the natural accumulation rule and instead apply the "reasonableness rule"). *Makeeff*'s reliance on reasonableness is consistent with our previous examination of the natural accumulation rule—a rule based upon reasonableness.

[¶15] In *Wotzka*, 2013 ND 99, ¶ 16, the Court examined *Makeeff's* rationale as persuasive authority. The Court ultimately concluded a slippery shower is an open and obvious condition that a landowner could reasonably anticipate will cause harm, "[s]imilar to the natural accumulation of snow and ice on a stairway to business premises." *Id.* The Court held a landowner has a duty to provide reasonably safe premises. *Id.* The *Wotzka* court recognized *Makeeff* was limited to stairways. *Makeeff's* limitation to stairs was also emphasized in *Beckler v. Bismarck Public School Dist.*, 2006 ND 58, ¶ 8, 711 N.W.2d 172 (citing *Makeeff*, 2005 ND 60, ¶ 25), where we explained the duty to entrants includes "a responsibility to keep stairs safe from dangerous conditions that may cause someone to slip and fall." The natural accumulation rule is not without exceptions, such as stairways attached to or next to a building. *Makeeff*, at ¶ 25 ("[W]e decline to extend our natural accumulation rule used in cases involving sidewalks to these circumstances."); s*ee also Strandness v. Montgomery Ward,* 199 N.W.2d 690, 692 (N.D. 1972) (finding an exception to the rule, and explaining that "*[u]nder these conditions*, Montgomery Ward owed a duty to the public to properly maintain its canopy in order to provide a sidewalk free from ice, such as would be expected when the sidewalk is protected by a canopy) (emphasis added). Therefore, the natural accumulation rule remains generally applicable.

6

[¶16] We similarly find *Makeeff* persuasive by examining the rationale of its exception to the natural accumulation rule. The *Makeeff* Court explained: "An impetus behind not extending the natural accumulation rule to stairways is proximity. Stairs next to or attached to a building present a different situation from that of sidewalks, which can be remote and may be many miles in length." *Makeeff*, 2005 ND 60, ¶ 17; *see also Kremer v. Carr's Food Center, Inc.,* 462 P.2d 747, 750-51 (Alaska 1969) (declining to extend the rule for sidewalks to business premises and explaining the numerous miles of sidewalks would make it an impossible task to remove all of the snow and ice in a timely manner); *Fulton v. Robinson Industries, Inc.,* 664 So.2d 170, 174 (Miss. 1995) (examining difference between stairs attached to a building and a parking lot because "a business owner could monitor the safety and condition of his stairs and any other physically adjacent parts of the building"); *see Claimsone v. Pro. Prop. Mgmt., LLC*, 2011 IL App (2d) 101115, ¶ 21, 956 N.E.2d 1065 ("The reasoning behind the general rule that a property owner has no duty to remove natural accumulations of ice and snow is that it is unrealistic to expect property owners to keep all areas where people may walk clear from ice and snow at all times during the winter months." (cleaned up)).

[¶17] Papenhausen argues the natural accumulation rule does not extend to "remote areas of property." However, remote areas are precisely the locations the natural accumulation rule protects because the reasonableness of monitoring remote areas of property, and lack of notice resulting therefrom, demonstrates the rationale for the rule. Where it is unreasonable for an owner or operator to continually monitor an area, such as the remote well site in rural North Dakota, it is unreasonable to expect the owner or operator to promptly clear any naturally accumulating snow or ice, removing that duty and thus liability from the owner or operator.

[¶18] Given the remote location of the well site, the natural accumulation rule should be applied in the circumstances surrounding Papenhausen's accident. We answer, "yes," to the first question certified by the United States District Court for the District of North Dakota.

# IV

[¶19] The United States District Court for the District of North Dakota certified an additional question regarding the snow accumulation rule, asking how the natural accumulation rule applies if an otherwise open and obvious danger becomes substantially more dangerous due to the natural accumulation of snow or ice.

[¶20] Papenhausen alleges the cause of the accident was an unreasonably dangerous hole concealed by ice and snow and created by the Defendants' negligent maintenance of the subject well site. He argues the natural accumulation of the ice and snow concealed a dangerous condition, resulting in an unreasonably dangerous condition. The federal court asks if the natural accumulation rule still applies if the snow and ice conceal a condition substantially more dangerous than one normally associated with ice and snow. We answer this second question, "no."

[¶21] This question requires us to consider whether the owner or operator of property has a duty resulting from snow and ice that, rather than creating an open and obvious danger of slippery conditions, conceals a separate open and obvious danger.

[¶22] Papenhausen argues the danger that injured him was not a "natural danger of ice or snow." The natural accumulation rule removes liability from a landowner or operator for the slippery conditions created by snow and ice. The slippery nature of snow and ice is an open and obvious condition. When the slippery nature of the snow and ice is not the open and obvious danger, but rather the snow or ice conceals another danger, we must consider the owner's or operator's duty in another light.

[¶23] "When a landowner has reason to anticipate that an invitee will proceed to encounter a condition, despite its open and obvious nature, the factfinder must still consider whether the landowner acted reasonably under the circumstances." *Wotzka*, 2013 ND 99, ¶ 16. "If a landowner permits dangerous conditions to exist on the premises, the landowner must take reasonable

measures to prevent injury to those whose presence on the property reasonably can be foreseen." *Id.* (cleaned up).

[¶24] We again look to the rationale underlying the natural accumulation rule:

> The rationale underlying the rule is that the plaintiff is in a much better position to prevent injuries from ice or snow because the plaintiff can take precautions at the very moment the conditions are encountered. When the snow or ice occurs naturally, the defendant is not in any better position than the plaintiff to foresee and prevent injuries, and therefore the defendant has no duty to remove the hazard. Thus, the open-and-obvious-danger exception is contained within, and is part and parcel of, the natural accumulation rule.

*RB, Jr. by & through Brown v. Big Horn Cnty. Sch. Dist. No. 3*, 2017 WY 13, ¶ 15, 388 P.3d 542 (Wyo. 2017) (cleaned up). We have held "[a] landowner's duty to protect entrants upon the land or warn of dangerous conditions is limited when the dangerous condition is known or obvious to the entrant." *Groleau*, 2004 ND 55, ¶ 17 (citing Restatement (Second) of Torts, § 343A (1965)). Under the natural accumulation rule, the open and obvious nature of the slippery danger of snow and ice eliminates the duty to remove that danger.

[¶25] Concealment of a danger negates the "open" nature of the open and obvious exception. Although the snow may conceal slippery ice below, the danger of slipperiness is an ordinary hazard obvious enough to a reasonable person that the natural accumulation rule still applies. The same is not necessarily true for an unrelated danger lurking below the snow or ice. Therefore, the concealment aspect of snow and ice is outside the scope of the natural accumulation rule.

[¶26] The federal court asks us to consider *Mikula v. Tailors*, 24 Ohio St. 2d 48, 57, 263 N.E.2d 316 (1970), which states:

> A deep hole in a parking lot which is filled or covered, or both, by a natural accumulation of snow constitutes a condition, the existence of which the owner of the premises is bound, in the exercise of reasonable care, to know. He is also bound to know that

a natural accumulation of snow which fills or covers the hole is a condition substantially more dangerous than that normally associated with snow. The invitee is not bound to anticipate that condition as an ordinary hazard resulting from the snow. He cannot be expected to protect himself from a danger which he cannot reasonably foresee. Under such circumstances, the owner's failure to correct the condition constitutes actionable negligence.

[¶27] The Ohio court first explained, "The defendant was held not liable upon the theory that the owner of the premises owes the invitee no duty with regard to conditions of the premises which are obvious and apparent. Natural accumulations of ice and snow, it was said, present obvious dangers from which an invitee can be expected to protect himself." *Mikula*, 24 Ohio St. 2d at 56-57. The Ohio court continued, "this is not to say . . . that there is no duty upon a person in control of business premises to remove a natural accumulation of ice and snow which creates a danger which is not obvious, which an invitee thereto cannot reasonably be expected to know, and of which the owner should have superior knowledge." *Id.* at 57.

[¶28] Ohio recognizes the natural accumulation rule. *Crossman v. Smith Clinic*, 2010-Ohio-3552, ¶ 10 ("[I]t is well established that an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow."). "However, an exception to the general 'no-duty' winter snow rule is where the land owner or occupier is shown to have actual or implied notice that the natural accumulation of snow and ice on his premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area." *Id.* at ¶ 11 (cleaned up). "In order to be liable, the land owner or occupier must have superior knowledge of the existing danger." *Id.* "A second exception to the general rule exists where the owner or occupier of land is actively negligent in permitting or causing an unnatural accumulation of ice or snow." *Id.* at ¶ 12.

[¶29] The Ohio court distinguishes between an "unnatural accumulation" and an "improper accumulation." "In the *Mikula* case, a natural accumulation of snow covered a seven-inch deep hole in a parking lot and constituted an improper accumulation by concealing the defect." *Crossman v. Smith Clinic*, 2010-Ohio-3552, ¶ 14. "[T]he cases referencing an 'improper accumulation' are instances where a *natural* accumulation of snowfall hid or covered a hazardous condition about which the property owner knew or should have known." *Id.* at ¶ 15 (citing also *Longenberger v. Collins Food* (1977), 52 Ohio App.2d 105, 368 N.E.2d 85 (the entire area was covered with substantial snow which concealed an abrupt steep change in grade); *Miller v. Biskind Dev. Corp.*, 8th Dist. No. 53470, 1988 WL 18818 (a natural accumulation of snow covered an eight-inch high concrete barrier)).

[¶30] Ohio premises liability creates an exception to the natural accumulation rule regarding concealment "where the land owner or occupier is shown to have actual or implied notice that the natural accumulation of snow and ice on his premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area." *Crossman v. Smith Clinic*, 2010-Ohio-3552, ¶ 11. Ohio's premises liability law is consistent with our premises liability law. We need not decide, nor adopt, Ohio's exception for a "condition substantially more dangerous" because concealment by snow is outside our natural accumulation rule.

[¶31] Concealment by snow or ice removes the openness of the separate danger, leaving the focus on the obviousness of that danger. The determination whether a particular dangerous condition upon land is "obvious" is governed by an objective standard:

> "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

Restatement (Second) of Torts § 343A, Comment b (1965). "Conditions may exist which, though seemingly innocuous in themselves, indeed present an

unreasonable danger under certain circumstances." *Groleau,* 2004 ND 55, ¶ 22 (citations omitted).

[¶32] "The determination of whether a dangerous condition is open and obvious, limiting the landowner's duty, is generally a question of fact for the trier of fact, and becomes a question of law only when reasonable minds could reach but one conclusion." *Groleau*, 2004 ND 55, ¶ 21. In this case, the "obvious" nature of the concealed hole or rut and whether it was a danger the owner knew or should have known about, are questions of fact for the trier of facts.

[¶33] Having considered whether a duty is created on the owner or operator of property by snow and ice that, rather than creating an open and obvious danger of slippery conditions, conceals a separate, otherwise open and obvious danger, and concluding the concealment aspect of snow and ice is outside the scope of our natural accumulation rule, we answer the federal court's second question, "no."

V

[¶34] On the record certified in this case, we answer the first question, "yes" and the second question, "no."

[¶35] Jon J. Jensen, C.J.
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte
  Douglas A. Bahr