[Cite as *South v. Browning*, 2013-Ohio-1491.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| PAT ARNOLD SOUTH, et al., | : | |
| Plaintiffs-Appellees, | : | CASE NO.   CA2012-09-088 |
| | : | O P I N I O N |
| - vs - | | 4/15/2013 |
| | : | |
| GARY BROWNING, et al., | : | |
| Defendants-Appellants. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CV80090


David P. Fornshell, Warren County Prosecuting Attorney, Keith W. Anderson, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiffs-appellees

Kevin L. Shoemaker, 471 East Broad Street, Suite 2001, Columbus, Ohio 43215, for defendants-appellants


**HENDRICKSON, P.J.**

{¶ 1} Defendants-appellants, Gary Browning and Jack Martin, appeal from a decision of the Warren County Court of Common Pleas in favor of Plaintiffs-appellees, Pat Arnold South, David G. Young, and Tom Ariss, Commissioners of Warren County, and Nick Nelson, Auditor of Warren County, in their official capacities, (collectively the county), which made findings relating to Browning's and Martin's employment relationship with Warren County.

{¶ 2}   In October 2010, Browning and Martin both retired from their positions with the Warren County Data Processing Department.  At that time, Browning was the Director and Martin was the Assistant Director of the Department.  Both requested separation pay for unused sick and vacation leave under Policy 5.02 of the Warren County Personnel Policy Manual.  Policy 5.02 provides:

A.  PAYMENT FOR SICK LEAVE CONVERSION

1.  Qualified employees, at the time of retirement or separation from active service with Warren County, may elect to receive appropriate payment for the value of their accrued, but unused sick leave credit.

2.  **As it relates to employees hired before January 1, 2007, <u>to qualify for payment an employee shall have had, prior to the date of retirement or separation</u> of employment,** ten (10) or more years of service with the County, the state, or any of its political subdivisions. Such payment shall be based on the employee's rate of pay at the time of retirement or separation and be made only once by Warren County to each employee and shall eliminate all sick leave credit accrued by the employee. No such payment shall be required to be made to any employee who is "terminated for cause" or who resigns to avoid termination by disciplinary action.

a. Upon separation from active service, as provided in 2(above), employees whose date of hire by Warren County was on or after April 3, 1985, are eligible to be paid in cash for one-fourth of the value of his/her accrued but unused sick leave, with a maximum payment of 30 days.

b. Upon separation from active service, as provide in 2(above), *a qualified employee who has been in the continuous employment of Warren County since April 2, 1985, or before*, is eligible to be paid in cash value for his/her accrued but unused sick leave, with a maximum payment of 120 days. (Emphasis added.)

* * *

B.  PAYMENT FOR ACCRUED BUT UNUSED VACATION LEAVE

> An employee with one or more years of service, who resigns, retires, or dies, is entitled to compensation at his/her current rate of pay, for any unused vacation leave to his/her credit, for up to the three years immediately preceding the last anniversary *date of employment* plus the accrual for the current anniversary year to the time of separation. (Emphasis added.)

{¶ 3} Browning's and Martin's requested payout figures for sick leave were based on calculations pursuant to Policy 5.02(A)(2)(b). The amount of vacation leave requested by each of them was based on a hire date in 1980. After Auditor Nelson submitted these requests, the county commissioners reviewed Policy 5.02 and found that Browning and Martin were entitled to separation pay pursuant to Policy 5.02(A)(2)(a), rather than 5.02(A)(2)(b), and that for purposes of calculating vacation leave, they were not hired until on or about October 1993. Consequently, the commissioners reduced the payouts. Browning and Martin objected to this reduction. The county, through the county commissioners and the auditor, responded to Browning's and Martin's objections by filing a declaratory judgment action. As to the issue of sick leave conversion, the county requested in their complaint that the court issue a judgment finding that Browning's and Martin's "date of hire was after April 3, 1985 and that each is entitled to separation pay for sick leave under [Policy] 5.02(A)(2)(a)." With respect to calculating unused vacation leave, the county requested that the court determine that Browning's and Martin's "date of hire was on or about October, [sic] 1993."

{¶ 4} The record indicates that although Browning and Martin worked for the benefit of the Warren County Data Processing Department from 1980 until their retirement in 2010, the method in which they were employed and compensated during this time period varied. In March 1980, Browning was hired and placed on the county payroll. However, this only lasted for about six months until October 1980. He was not placed back on county payroll until around October 1993. Similarly, Martin was not placed on county payroll until October 1993.

- 3 -

Martin, Browning and Nelson all testified regarding the manner in which the two men were paid from 1980 until 1993.

{¶ 5} Browning explained that in October 1980 he asked his boss, Leslie Spaeth, the county auditor at the time, for a pay increase. According to both Browning and Nelson, Spaeth indicated that he would be unable to provide the increase in pay as the commissioners were unlikely to approve the requested salary. However, Browning stated that Spaeth told him that if he was willing to be paid as a vendor then he would receive the pay raise. Browning agreed to be paid as a vendor, took the raise and continued doing the same job. Martin also testified that in 1980 he interviewed with Spaeth for a position with the Data Processing Department and was told that the county would not pay the salary that he requested, but if he was paid as a vendor, then he would receive a higher salary. Martin also agreed to be paid as a vendor. Browning and Martin testified that based on this arrangement, a corporation was formed.[1] From 1980 to 1993, the corporation submitted invoices to the county, the county then paid the corporation and Browning and Martin would split the check from the county "50/50." The two men also testified that during this time they also received jobs from other businesses and billed them through this corporation. Browning and Martin also testified that they did not receive county benefits during this time, such as health insurance or sick and vacation leave.

{¶ 6} The parties submitted cross-motions for summary judgment. The motions were denied by the trial court after it found that there was a genuine issue of material fact regarding whether there was "continuous employment" from 1980 until the time of retirement. The parties then entered a stipulation that "every year from 1980 through 1993 each defendant received payments directly to them from Warren County on general warrants of

---

1. The corporation was originally Thomas-Martin and Associates but later it became Innovative Data Processing.

the county." The matter was submitted to the trial court for a decision. Based on the record, the trial court found: "that the Defendants were not paid, in whole or in part, by the Plaintiffs until 1993 and Defendants are entitled to vacation leave conversion from October 1993; and Defendants were not employees until after April 3, 1985; and as such, Section 5.02(A)(2)(a) is applicable of [sic] Defendants' sick leave conversion upon their retirement." Browning and Martin appeal, raising two assignments of error. For ease of discussion we address the assignments of error out of order.

{¶ 7} Assignment of Error No. 2:

{¶ 8} THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANTS-APPELLANTS WERE NOT PAID, IN WHOLE OR IN PART, BY THE PLAINTIFFS-APPELLEES UNTIL 1993, AND THAT THEY WERE NOT EMPLOYEES UNTIL AFTER APRIL 3, 1985.

{¶ 9} In their second assignment of error, Browning and Martin assert that the trial court erred in granting declaratory judgment in favor of the county because the county failed to present sufficient evidence that they were not employees. Browning and Martin argue that based on the stipulation submitted to the court, they were employees as defined in Policy 1.02, and consequently were "continuously employed" by the county as required in Policy 5.02(A)(2)(b). We find no merit to this argument.

{¶ 10} The Supreme Court recently clarified that once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed de novo. *Arnott v. Arnott*, 132 Ohio St. 3d 401, 2012-Ohio-3208, ¶ 13, 17. Accordingly, we review the trial court's decision de novo.

{¶ 11} Generally, employee handbooks and policy manuals are not in and of themselves contracts of employment, yet they may define certain terms of the relationship if the parties manifest an intention to be bound them. *See Seta v. Reading Rock, Inc.*, 100

Ohio App.3d 731, 738 (12th Dist.1995); *Curry v. Blanchester*, 12th Dist. Nos. CA2009-08-010 and CA2009-08-012, 2010-Ohio-3368, ¶ 72; *Jajecic v. Universal Dev. Mgt. Corp.*, 11th Dist. No. 2010-T-0119, 2011-Ohio-3752, ¶ 30. In particular, Ohio courts have enforced company policies regarding payment, or nonpayment, of personal or vacation time upon termination of employment when those policies are clear and published in an employee handbook. *Shuler v. USA Tire, Inc.*, 12th Dist. No. CA90-08-171, 1991 WL 106030 (June 17, 1991); *see also, Winters-Jones v. Fifth Third Bank*, 8th Dist. No. 75582, 1999 WL 342215 (May 27, 1999) (holding that former employee was not entitled to payment for vacation time accrued but not used at the time she left her employment, when the company's policy manual clearly stated that vacation time must be used during the employee's employment or is lost); *Braucher v. Allied Truck Parts Co.,* 5th Dist. No. 2002CA00278, 2003-Ohio-1698 (holding that employee was entitled to accrued vacation pay upon termination when employee handbook expressly provided "Eligible employees *will* be paid for earned but unused vacation upon termination").

{¶ 12} In the present case, there is evidence in the record that the parties agreed to be bound by the policies set forth in the Policy Manual. Browning's and Martin's claim of entitlement to payments for accrued but unused vacation and sick leave and the county's later issuance of checks in light of these claims, manifest the parties' intent to be bound by the polices set forth in Policy 5.02. As the parties intended to be bound by this policy, the question before this court is what benefits are Browning and Martin entitled to under Policy 5.02.

{¶ 13} At oral argument the parties noted, and we agree, that in order to determine whether Browning and Martin are entitled to separation pay under Policy 5.02(A)(2)(a) or (b) the phrase "continuous employment" controls. Additionally, the determination of the amount of vacation leave the men have accrued depends on the "date of employment" for each.

{¶ 14} A review of the policy indicates that "continuous employment" and "date of employment" are not defined in the policy manual. Accordingly, it is necessary for us to look to the parties' intent and the actual practices and procedures of the parties to guide our determination as to whether Browning and Martin were in "continuous employment" of the county for purposes of Policy 5.02(A)(2)(b) and the "date of employment" for each.

{¶ 15} The parties urge the court that the definition of employee, under Policy 1.02, would assist in determining whether Browning and Martin were in "continuous employment" of the county. They contend that if the men fall within the definition of employee then they should be considered to have been in "continuous employment" with the county. We agree and also find that the definition is salient in determining the "date of employment" for both Browning and Martin. Policy 1.02 defines employee as:

> Any person, including managerial, supervisory, administrative, or non-supervisory personnel, who are paid in whole or in part by the employer, regardless of whether such person works on a full-time, part-time, casual, intermittent or appointed basis.

{¶ 16} There is no dispute that from 1993 to their retirement in 2010, both Browning and Martin were "employees" for the purposes of Policy 1.02. What is disputed is whether Browning and Martin were also employees from 1980 until 1993 while they were being paid as "vendors" through a corporation for their work for the county.

{¶ 17} Browning and Martin focus on the second part of the definition of employee which bases a person's employment status on the manner in which they are paid. Based on the stipulation submitted to the court, Browning and Martin contend that they were in fact employees because they received direct payments from the county. The parties stipulated that "every year from 1980 through 1993 each defendant received payments directly to them from Warren County on general warrants of the county." Although at first blush, the

stipulation would seemingly require a finding that Browning and Martin were indeed employees, the evidence in the record suggests otherwise.

{¶ 18} Testimony from both Browning and Martin suggested that the direct payments were in error and were meant to be paid to the corporation or were for expenses. Martin testified that he would sometimes receive checks directly from the county but that he thought "it was basically just error up in the auditor's office" or represented reimbursement for expenses. Browning stated that "just sometimes that'd happen" and that the "payroll people just accidentally put my name on the warrant instead of a company name." Browning and Martin testified that they were paid for their services to the County Data Processing Department via the corporation in which they were members. Browning explained that "the company would receive a check from Warren County and then I would divide that equally between me and [Martin]." The county did not control in any manner the method in which Browning and Martin divided the single check received from the county. The evidence accordingly suggests that the majority of payments for the work Browning and Martin did for the county in 1980 through 1993 were to the corporation.

{¶ 19} Furthermore, the corporation cannot be characterized as a "person" contemplated by Policy 1.02. As noted by the trial court, in order to be an employee within the policy, the payment must be to a *person*. A person is generally defined as a human being or a natural person. *Blacks Law Dictionary* 1178 (8th Ed.2004). As mentioned above, however, from 1980 until 1993, Browning and Martin were not regularly paid by the county. Rather, the county paid *the corporation* which is generally not considered to be a natural person. *See Mohme v. Deaton*, 12th Dist. No. CA2005-12-133, 2006-Ohio-7042, ¶ 7 ("A corporation is an artificial person, created by the General Assembly and deriving its power, authority and capacity from the statutes").

{¶ 20} Additionally, the practices of the parties further demonstrate their intent to treat Browning and Martin as vendors or contractors and not employees. Browning and Martin both testified that they agreed to be paid as vendors or contractors for the county in an effort to receive a higher salary. Browning and Martin also testified that during this time they did not receive or expect to receive any of the fringe benefits that came with being employed by the county, including receiving vacation and sick time. Nelson testified that only employees of the county received sick leave.[2] The county did not control when Browning or Martin took time off for sick or vacation leave. According to Martin, "we just did it." Martin also explained that he and Browning never allotted for vacation or sick time because the two "took off very seldom."

{¶ 21} Moreover, it is important to note that Policy 5.02(A)(2)(b) allows for an employee to receive payment only for *accrued* but unused sick time. Browning and Martin both testified that they did not begin to accrue sick time from the county until 1993 when they were placed on the payroll. Finally, Browning stated that the corporation performed work for other clients during this time period and even rented "office space for a small amount of time." Accordingly, from this evidence, we find that the parties did not intend for Browning and Martin to be considered employees from 1980 to 1993.

{¶ 22} Based on the foregoing, Browning and Martin became employees of the county in 1993 once they were placed on county payroll and were "paid in whole or in part by the employer." Therefore, for purposes of Policy 5.02, Browning and Martin were not employees until "after April 3, 1985" and are entitled to receive accrued sick leave pursuant to Policy 5.02(A)(2)(a). For purposes of calculating accrued vacation time, Browning and Martin's date of employment was on or about October 1993.

---

2. Nelson explained that an independent contractor of the county would receive sick leave only if the contract between the contractor and the county provided for such a benefit.

- 9 -

{¶ 23} Browning's and Martin's second assignment of error is overruled.

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS IN DENYING THEIR MOTION FOR SUMMARY JUDGMENT.

{¶ 26} In their first assignment of error, Browning and Martin assert that the court should have granted their motion for summary judgment as the "parties were in complete agreement that the definition of employee in the Policy Manual included Browning and Martin," and therefore there were no disputed facts and they were entitled to judgment as a matter of law. The county disagrees that the "parties were in agreement" that Browning and Martin were employees.

{¶ 27} Ordinarily, if a trial court denies a summary judgment motion due to the existence of genuine issues of material fact, and a subsequent trial results in a verdict for the party who did not move for summary judgment, then any error in denying the motion for summary judgment is rendered moot or harmless. *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 157 (1994); *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 13-14 (10th Dist.).

{¶ 28} Here, Browning and Martin sought summary judgment, yet the court denied the motion finding that there were genuine issues of material fact regarding the purpose of the direct payments from the county to Browning and Martin. Because the case was then submitted to the court for a decision on the merits, which resulted in a judgment in favor of the county, we find that any error in denying Browning's and Martin's motion for summary judgment is rendered moot or harmless. *Whittington* at 157 (noting that to allow a summary judgment decision based upon less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry).

{¶ 29} Accordingly, Browning's and Martin's first assignment is overruled.

{¶ 30} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.