[Cite as *Smith v. Ironwood*, 2022-Ohio-875.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| TERRI EGELSTON SMITH, et al., | : | CASE NOS. CA2021-07-065 |
| Appellees and Cross-Appellants, | : | CA2021-08-068 |
|  | : | O P I N I O N |
| - vs - | : | 3/21/2022 |
|  | : |  |
| IRONWOOD AT SHAKER RUN, et al., | : |  |
| Appellants and Cross-Appellees. | : |  |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19 CV 91902

Young, Reverman & Mazzei Co., LPA, and Bradford C. Weber, for appellees and cross-appellants.

John K. Benintendi, for appellants and cross-appellees.

**M. POWELL, P.J.**

{¶ 1} Appellants and Cross-appellees, Towne Properties Asset Management Company and Towne Properties Assets Management Company, Ltd. (collectively "Towne Properties"), and Ironwood at Shaker Run Condominium Owners' Association, Inc. ("Ironwood"), appeal the Warren County Common Pleas Court's May 7, 2019 Decision and

Entry denying appellants' motion for summary judgment, and following a bench trial, the trial court's August 21, 2020 Final Judgment Entry granting judgment to appellees and cross-appellants, Terri Smith and her husband Douglas Smith (Terri and Douglas individually and the Smiths collectively), on their negligence claim. The Smiths cross-appeal the trial court's July 20, 2021 Amended Final Judgment Entry granting judgment to appellants on the Smiths' breach-of-contract claim.

{¶ 2} In 2012, the Smiths purchased a condominium unit located on Double Eagle Court in the Ironwood at Shaker Run Condominium development in Warren County, Ohio. Towne Properties services the community by providing maintenance work, including the removal of accumulations of snow and ice in the winter. After moving into their condominium, the Smiths received Ironwood's Resident Handbook ("handbook"), which includes policies on snow removal, prohibits the use of chemical de-icers, and only allows the use of sand for "traction in icy conditions."

{¶ 3} On January 19, 2015, at approximately 7 a.m., Terri exited her condominium through her garage and walked down her driveway toward her husband's vehicle, which was parked in a parking space opposite her condominium. Terri's driveway was dry, but after taking several steps across Double Eagle Court, Terri slipped and fell on ice, suffering serious physical injuries. The area where Terri fell was dark and was illuminated neither by the garage door opener light nor the light on the outside of her garage.

{¶ 4} The parking space where her husband's vehicle was parked abuts a large, slopped, and grassy island separating Double Eagle Court from another street in the condominium development. The ice upon which Terri fell apparently resulted from water runoff from the slopped island. The water would run off the elevated island, across the parking spaces and Double Eagle Court, and into a curb drain. The area where Terri fell is

part of the common areas within the condominium development and is controlled by Ironwood and serviced by Towne Properties.

{¶ 5} Following his wife's fall, Douglas called Murry Feldstein, appellants' then association manager, to report the accident. Feldstein acknowledged there was a drainage problem in the area and to be careful. Several months after Terri's fall, Ironwood issued a notice to condominium owners, announcing it had contracted to have French drains installed "along the bottom of the [island] that drains onto Double Eagle [Court]." The notice indicated that "[t]he goal is to eliminate the large amount of drainage (water and ice) that comes off of this hill and is negatively affecting the roadways and can become hazardous at times."

{¶ 6} On January 30, 2019, the Smiths filed a complaint against appellants, alleging negligence and breach of contract.[1] The Smiths alleged that (1) the ice Terri slipped on was an unnatural accumulation of ice, (2) appellants were aware of the drainage problem and accumulation of ice and water prior to Terri's fall, (3) appellants had a duty to warn Terri of the dangerous condition, and (4) appellants failed to reasonably maintain the common areas, including Double Eagle Court. The Smiths asserted that appellants' negligence caused Terri's injuries and Douglas' loss of consortium. The Smiths further alleged that the handbook constituted a contract between appellants and the Smiths and that appellants breached it by failing to maintain Double Eagle Court and the parking area in a reasonably safe condition, resulting in Terri's injuries.

{¶ 7} Appellants moved for summary judgment on both claims. Appellants argued they owed the Smiths no duty of care because the ice upon which Terri fell was not an

---

1. The Smiths originally filed a complaint in 2017, subsequently dismissed it without prejudice, and timely refiled it.

unnatural accumulation of ice, appellants lacked superior knowledge of the ice accumulation, and the Smiths' negligence claim was barred by the open and obvious doctrine. Appellants further argued the Smiths failed to attach any contract to the complaint and failed to present any evidence that appellants assumed a contractual duty to remove snow or ice from the parking area.

{¶ 8} On May 7, 2019, the trial court denied appellants' motion for summary judgment regarding the Smiths' negligence claim. The trial court found there were genuine issues of material fact regarding whether the ice upon which Terri fell was a natural accumulation or an unnatural accumulation caused by appellants. The trial court also rejected appellants' argument that darkness was an open and obvious condition at the time of Terri's fall negating any duty appellants owed Terri. Regarding the Smiths' breach-of-contract claim, the trial court stated that "no argument was put forward * * * and, therefore, this Court cannot grant summary judgment as to the breach of contract claim[.]"

{¶ 9} Appellants moved the trial court to reconsider its summary judgment decision, arguing that the court had improperly placed the burden of proof on appellants to demonstrate that the ice was a natural accumulation, and noting that appellants had in fact addressed the breach-of-contract claim in their summary judgment pleadings. The trial court denied the motion for reconsideration. The breach-of-contract claim remained pending before the trial court following the conclusion of the summary judgment stage.

{¶ 10} The parties stipulated damages and the matter proceeded to a bench trial in August 2020. Terri, Douglas, and Feldstein testified. On August 21, 2020, the trial court found appellants liable for negligence. Although the trial court found that the ice upon which Terri slipped and fell was a natural accumulation of ice, it further found that appellants "had actual or constructive notice that the natural accumulation created a condition substantially

more dangerous than Terri or another condominium owner would associate with ice." The trial court rejected the application of both the open and obvious doctrine and the step-in-the-dark rule. The trial court awarded the Smiths "the stipulated damages amount of $75,000." The trial court did not analyze or resolve the Smiths' breach-of-contract claim, and did not award damages with respect to that claim.

{¶ 11} Appellants appealed the trial court's denial of their summary judgment motion and the court's judgment in favor of the Smiths to this court. On February 8, 2021, we dismissed the appeal for lack of a final appealable order due to the trial court's failure to address the Smiths' breach-of-contract claim and the lack of Civ.R. 54(B) language in the trial court's judgment entry. *See Smith v. Ironwood at Shaker Run Condominium Owners' Assn.*, 12th Dist. Warren No. CA2020-08-051, 2021-Ohio-346. The trial court subsequently revisited the matter based upon the trial record.

{¶ 12} On July 20, 2021, the trial court reiterated its judgment in favor of the Smiths on their negligence claim but ruled in favor of appellants on the Smiths' breach-of-contract claim, as follows:

> [T]he Court finds Defendants owed Terri a duty of ordinary care to maintain the premises in a reasonably safe condition, were aware of a natural accumulation of snow and ice that was substantially more dangerous than normally associated with snow and ice, and breached their duty by not addressing this known accumulation of snow and ice before Terri's fall. The Court further finds the handbook in question is not a contract and, even if it were to be construed as a contract, Defendants did not breach the contract by failing to clear ice from around Terri's condominium.

{¶ 13} Appellants now appeal the trial court's May 7, 2019 denial of their summary judgment motion and the trial court's August 21, 2020 judgment finding them negligent, raising four assignments of error. The Smiths cross-appeal the trial court's July 20, 2021 dismissal of their breach-of-contract claim, raising one cross-assignment of error.

Appellants' third assignment of error will be addressed out of order; their second and fourth assignments of error will be addressed together.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT.

{¶ 16} Appellants argue that the trial court erred in denying their motion for summary judgment because (1) the ice upon which Terri slipped and fell was a natural accumulation of ice that was not substantially more dangerous than one would normally associate with ice, (2) darkness was an open and obvious condition, and (3) there was no evidence that the parking area was negligently designed or that the drainage system caused an unnatural accumulation of ice.

{¶ 17} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 12th Dist. Clermont No. CA2015-02-021, 2016-Ohio-549, ¶ 18. However, any error in denying a summary judgment motion is rendered moot or harmless if the motion is denied due to the existence of genuine issues of material fact, and a subsequent trial results in a verdict in favor of the party who did not move for summary judgment. *Id.*; *Jackson v. Hogeback*, 12th Dist. Butler No. CA2013-10-187, 2014-Ohio-2578, ¶ 12, citing *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 157, 1994-Ohio-362. Essentially, "a party may not appeal an order denying summary judgment after a full trial on the merits because that order retains its interlocutory character as simply a step along the route to final judgment." *A N Bros Corp.* at ¶ 18; *Ortiz v. Jordan*, 562 U.S. 180, 184, 131 S.Ct. 884 (2011). Once a case proceeds to trial, the full record is developed, and this record supersedes the limited record existing at the time of the

- 6 -

summary judgment motion. *A N Bros Corp.* at *id.*; *Ortiz* at *id.*

{¶ 18} The trial court denied appellants' motion for summary judgment finding there were genuine issues of material fact regarding whether the ice upon which Terri slipped and fell was a natural or unnatural accumulation of ice. Because the case subsequently proceeded to a bench trial, which resulted in a verdict in favor of the Smiths, any error in denying appellants' motion for summary judgment is rendered moot or harmless. *South v. Browning*, 12th Dist. Warren No. CA2012-09-088, 2013-Ohio-1491, ¶ 28.

{¶ 19} Appellants' first assignment of error is overruled.

{¶ 20} Assignment of Error No. 3:

{¶ 21} THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY MISAPPLYING THE LAW TO THE FACTS.

{¶ 22} Appellants argue that the trial court's judgment in favor of the Smiths on their negligence claim is against the manifest weight of the evidence.

{¶ 23} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Holmes v. Lakefront at W. Chester*, 12th Dist. Butler No. CA2021-05-046, 2022-Ohio-99, ¶ 34; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. When considering a challenge to the manifest weight of the evidence, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Holmes* at *id.*; *Eastley* at ¶ 20.

{¶ 24} In a negligence action, a plaintiff must prove the existence of a duty owed, a breach of that duty, and an injury proximately caused by the breach. *Gentry v. Collins*, 12th Dist. Warren No. CA2012-06-048, 2013-Ohio-63, ¶ 13.

{¶ 25} Generally, an owner or occupier of land does not owe a duty to business invitees to remove natural accumulations of snow and ice or to warn such invitees of the dangers inherent to such accumulations. *Holbrook v. Kingsgate Condominium Assn.*, 12th Dist. Butler No. CA2009-07-193, 2010-Ohio-850, ¶ 13. This is because the dangers associated with natural accumulations of snow and ice are typically considered to be so open and obvious that an owner or occupier may reasonably expect that a business invitee will safeguard himself against those dangers. *Id.*, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph two of the syllabus. This general rule, known as the no-duty winter rule, is subject to two exceptions.

{¶ 26} Under the first exception, a duty to exercise reasonable care to protect business invitees arises when an owner or occupier has actual or constructive notice that a natural accumulation of snow or ice has created a condition substantially more dangerous than an invitee would normally associate with snow and ice. *Holbrook* at ¶ 14 (hereinafter the "substantially more dangerous exception"). In order for liability to attach under this exception, the owner or occupier must have some "superior knowledge" of the existing danger. *Id.*

{¶ 27} This exception was first applied by the Ohio Supreme Court in *Mikula v. Tailors*, 24 Ohio St.2d 48 (1970). The supreme court found that "a natural accumulation of snow which fills or covers [a deep] hole [in the surface of a parking lot] is a condition substantially more dangerous than that normally associated with snow," and that a business invitee "is not bound to anticipate that condition as an ordinary hazard resulting from the snow." *Id.* at 57. *Mikula* and its progeny have limited this exception to cases in which a natural accumulation of ice or snow conceals another danger. *See Crossman v. Smith Clinic*, 3d Dist. Marion No. 9-10-010, 2010-Ohio-3552; *Cooper v. Valvoline Instant Oil*

*Change*, 10th Dist. Franklin No. 07AP-392, 2007-Ohio-5930; *Koss v. Cleveland Holding Corp.*, 8th Dist. Cuyahoga No. 34111, 1975 Ohio App. LEXIS 6565 (July 10, 1975).

{¶ 28} Under the second exception, an owner or occupier has a duty to exercise reasonable care to protect business invitees from unnatural, i.e., man-made or man-caused, accumulations of snow or ice. *Holbrook*, 2010-Ohio-850 at ¶ 16. Unnatural accumulations of snow or ice refer to causes and factors other than the winter weather's low temperatures, strong winds, and drifting snow. *Id*. at ¶ 17. "[T]he melting of ice and snow and subsequent refreezing is insufficient, standing alone, to impose liability," and instead, the owner or occupier must do something that causes the snow or ice to accumulate in an unexpected location or manner in order for the accumulation to be considered unnatural. *Id.* This exception, therefore, applies when the owner is actively negligent in permitting or creating an unnatural accumulation of snow or ice. *Miller v. Tractor Supply Co.*, 6th Dist. Huron No. H-11-001, 2011-Ohio-5906, ¶ 10.

{¶ 29} This appeal implicates only the substantially more dangerous exception to the no-duty winter rule. The trial court found that the ice upon which Terri slipped and fell was a natural accumulation. The Smiths do not challenge this finding. In this regard, the Smiths testified that there was no evidence appellants created the January 19, 2015 icy accumulation upon which Terri slipped and fell. Thus, to prevail on their negligence claim at trial, the Smiths were required to prove that the natural accumulation of ice was substantially more dangerous than Terri could have appreciated and that appellants had superior knowledge of the existing danger. *Holbrook v. Oxford Hts. Condominium Assn.*, 8th Dist. Cuyahoga No. 81316, 2002-Ohio-6059, ¶40.

{¶ 30} The trial court found that appellants were liable under the substantially more dangerous exception because although the ice upon which Terri slipped and fell was a

natural accumulation of ice, appellants "had actual or constructive notice that the natural accumulation created a condition substantially more dangerous than Terri or another condominium owner would associate with ice." Specifically, the trial court found that appellants knew about the drainage problem in the area and that such drainage problem "increased the level of naturally accumulating ice in the area outside [the Smiths'] condominium in a manner that made the condition substantially more dangerous than one would normally associate with ice in the wintertime."

{¶ 31} There is no evidence that the ice upon which Terri fell concealed another hazard or danger nor is there evidence that the ice created a condition substantially more dangerous than normally associated with ice or snow. The only hazard involved in Terri's injuries was the slippery nature of the naturally accumulated ice on Double Eagle Court and the parking area. *Miller*, 2011-Ohio-5906 at ¶ 14; *Cooper*, 2007-Ohio-5930 at ¶ 24. "Black ice, moreover, is not a condition substantially more dangerous than is normally associated with freezing rain" or the natural thaw and freeze cycles in wintertime life in Ohio. *Miller* at ¶ 14, 16. The trial court applied the substantially more dangerous exception based only upon the quantity of ice that had naturally accumulated. However, contrary to the trial court's reasoning, the mere quantity of naturally accumulating ice does not invoke the substantially more dangerous exception to the no-duty winter rule.

{¶ 32} Furthermore, there is no evidence that appellants had superior knowledge of the icy condition. The Smiths testified that they had traversed Double Eagle Court and the parking area "outside their condominium countless times since 2012 to get to their respective vehicles and had never encountered invisible ice like this on the ground before." The Smiths each conceded they had no evidence appellants were aware of the icy condition or whether anyone had fallen on ice on Double Eagle Court prior to Terri's fall. There is no

evidence that anyone, including the Smiths, had reported the icy condition of Double Eagle Court and the parking area on January 19, 2015, to appellants. *See Oxford Hts.*, 2002-Ohio-6059; *Mayes v. Boymel*, 12th Dist. Butler No. CA2002-03-051, 2002-Ohio-4993. Feldstein testified appellants had no knowledge of anyone falling on ice in the condominium development prior to Terri's fall; furthermore, appellants had no knowledge that water runoff from the island made the ice upon which Terri slipped and fell more hazardous than what one would expect in the wintertime. While Feldstein acknowledged there was a "drainage problem" in the area, the Smiths' testimony shows they were equally aware that water drained off the elevated island, across Double Eagle Court and the parking area, and into the curb drains located on the condominium side of the street. In fact, Douglas testified he had discussed it with Terri on occasion.

{¶ 33} This court has previously held that "snow and ice are a part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected in this part of the country." *Mayes* at ¶ 14. In light of the Smiths' testimony, Terri had both actual and constructive knowledge of the dangers presented by natural accumulations of ice and snow. As stated above, appellants did not have superior knowledge of an unreasonably dangerous condition different from that presented by natural accumulations of ice and snow generally. Rather, the evidence shows that the parties had equal knowledge of the dangers resulting from the natural accumulations of ice and snow.

{¶ 34} The trial court, therefore, erred in finding appellants liable to the Smiths for negligence under the substantially more dangerous exception to the no-duty winter rule.

{¶ 35} In light of the foregoing, we find that the decision of the trial court granting judgment in favor of the Smiths on their negligence claim is against the manifest weight of the evidence. Appellants' third assignment of error is well-taken and sustained.

{¶ 36} Assignment of Error No. 2:

{¶ 37} THE TRIAL COURT ERRED IN MISAPPLYING THE OPEN AND OBVIOUS DOCTRINE IN ITS FINAL JUDGMENT ENTRY.

{¶ 38} Assignment of Error No. 4:

{¶ 39} THE TRIAL COURT ERRED IN NOT APPLYING THE STEP-IN-THE-DARK RULE.

{¶ 40} The trial court rejected the application of the open and obvious doctrine "because black ice, by its nature, is invisible." The court further rejected the application of the step-in-the-dark rule "as Terri had knowledge of where she was walking due to her repeated trips to the vehicle parking lot for several years prior to the fall."[2] In their second assignment of error, appellants argue that the trial court misapplied the open and obvious doctrine by improperly focusing on the hazard, the black ice, rather than on the darkness itself.[3] In their fourth assignment of error, appellants argue the trial court erred by not applying the step-in-the-dark rule.

{¶ 41} Given our resolution of appellants' third assignment of error, their second and fourth assignments are moot and need not be considered. App.R. 12(A)(1)(c); *Vesper v. Otterbein Lebanon*, 12th Dist. Warren No. CA2021-02-016, 2021-Ohio-4545.

---

2. The step-in-the-dark rule "holds generally that one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." *Posin v. A. B. C. Motor Court Hotel*, 45 Ohio St.2d 271, 276 (1976). *See also Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961 (2d Dist.), in which the Second District Court of Appeals compares the open and obvious doctrine and the step-in-the-dark rule; *Prater v. United Steel Workers of Am. Local 1949*, 3d Dist. Marion No. 9-79-22, 1980 Ohio App. LEXIS 10284 (Mar. 21, 1980), in which the Third District Court of Appeals held that the step-in-the-dark rule was not applicable in part because the plaintiff was traversing the same general area she had successfully traversed without mishap moments before.

3. The Ohio Supreme Court has held that "'darkness' is always a warning of danger, and for one's own protection it may not be disregarded." *Jeswald v. Hutt*, 15 Ohio St.2d 224 (1968), paragraph three of the syllabus. We have recognized that "darkness is an open and obvious condition." *Gentry v. Collins*, 12th Dist. Warren No. CA2012-06-048, 2013-Ohio-63, ¶ 22.

{¶ 42} We now turn to the Smiths' cross-assignment of error:

{¶ 43} THE TRIAL COURT ERRONEOUSLY FOUND THAT A BREACH OF CONTRACT CASE HAD NOT BEEN ESTABLISHED.

{¶ 44} The Smiths based their breach-of-contract claim on Ironwood's resident handbook and alleged that appellants breached the handbook/contract by failing to maintain Double Eagle Court and the parking area in a reasonably safe condition, resulting in Terri's injuries. The trial court found that the handbook did not meet the requirements of a contract and therefore did not establish a maintenance contract between appellants and the Smiths. The court further found that, even assuming the handbook was a contract, the Smiths failed to prove appellants breached it. In their cross-assignment of error, the Smiths argue that the trial court erred in its decision because in determining appellants' obligations and responsibilities, the court solely limited its examination to the handbook instead of examining the totality of the evidence, including Feldstein's testimony.

{¶ 45} The handbook states that a homeowner in the condominium development automatically becomes a "member of the Ironwood at Shaker Run Condominium Owners Association," that each member is required to pay a "monthly Assessment," and that Ironwood is governed by a set of documents, including Ironwood's Declaration of Condominium Ownership. The handbook encourages homeowners to read the Declaration and Ironwood's by-laws.

{¶ 46} Pursuant to the handbook, (1) Ironwood has a general responsibility to maintain "[a]ll private roadways, driveways, pavements, sidewalks, and uncovered parking areas," (2) snow captains act as a liaison to Ironwood's Board of Trustees and determine "if snow removal is required pursuant to guidelines approved by the Board," (3) in the event snow removal is required, snow captains and building representatives report if the

sidewalks and parking areas were adequately cleared to ensure safety, and (4) "snow pushing" is part of the annual budget and is performed by an independent contractor. The handbook provides that the independent contractor "will remove snow after the snow has stopped and only after an accumulation of 2 inches," prohibits the use of chemical de-icers because such use would void the concrete warranty, and permits the "use of sand only to provide traction in icy conditions." The handbook is silent as to when ice should be removed.

{¶ 47} Feldstein testified that appellants' responsibilities at the time of Terri's fall included maintaining the common areas, driveways, sidewalks, and parking areas, removing snow, and treating for ice.

{¶ 48} The elements of a claim for breach of contract "include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Oxford Hts.*, 2002-Ohio-6059 at ¶ 33.

{¶ 49} A contract is a "promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty." *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). The essential elements of a contract include "an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract." *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 13. "In order to declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." (Citations omitted.) *Episcopal Retirement Homes* at 369; *Economy Linen & Towel Serv., Inc. v. McIntosh*, 12th Dist. Butler No. CA2000-11-226, 2001 Ohio App. LEXIS 4145, *5 (Sep. 17, 2001).

{¶ 50} We find no error in the trial court's dismissal of the Smiths' breach-of-contract claim. The Smiths did not submit Ironwood's Declaration of Condominium Ownership or its by-laws and there is no evidence the documents include any responsibility for ice removal. The handbook was provided to the Smiths only after they had purchased their condominium unit. There were therefore no offer and no acceptance and the handbook was not part of the Smiths' condominium purchase agreement. Rather, as the trial court aptly found, the "handbook is simply a notification to condominium unit owners of the services that come with their payment of a condominium association fee. * * * The handbook does not establish a meeting of the mind between [appellants] and [the Smiths], nor does it contain any evidence of 'consent' between the parties." We further note that the Smiths failed to provide any written evidence of their performance of the alleged contract between them and appellants (i.e., payment of their monthly fee). *See Oxford Hts.*, 2002-Ohio-6059 at ¶ 33, fn. 1.

{¶ 51} The Eighth District's *Oxford Hts.* opinion supports our analysis. In that case, Susan Holbrook, a condominium owner, slipped and fell on an icy sidewalk as she was entering her condominium. She and her husband sued the condominium association, alleging breach of contract based upon a letter they had received from the association. The letter referred to the association's snowplow contract with an independent contractor for snow and ice removal and stated that the snowplow contract provided for removal of snow when the snow accumulation reached a depth of two inches, and for ice removal "as the need occurs." In opposing summary judgment, the Holbrooks argued that the letter was a maintenance contract between them and the association. The Eighth District upheld the trial court's grant of summary judgment to the association.

{¶ 52} In so holding, the court of appeals found that the letter received by the

- 15 -

Holbrooks did not constitute a contract between them and the association because

> The letter clearly does not meet the requirements [of a contract]. It is simply a letter to "Unit Owners," which presumably included [the Holbrooks], outlining certain provisions of the contract for snow and ice removal between Continental Management Company (who is not a party to this action) and *Rustic*. It does not address [*the Holbrooks'*] contractual obligations nor evince any "meeting of the minds" by the Holbrooks and Oxford Heights or either party's consent to the alleged contract. Therefore, it does not establish a maintenance contract between the Holbrooks and Oxford Heights.

> [W]ithout any evidence of a contract, the Holbrooks' breach of contract claim necessarily fails.

*Oxford Hts.*, 2002-Ohio-6059 at ¶ 32-33.

{¶ 53} The Eighth District further found that "even assuming for the sake of argument that the letter * * * somehow created a contract between [the Holbrooks] and Oxford Heights, * * * [they] failed to present any evidence regarding breach of its terms." *Id.* at ¶ 34. Specifically, the court of appeals found that the Holbrooks "presented no evidence that there was a two inch or greater accumulation of snow on the sidewalk prior to Susan's fall that should have been removed pursuant to the contract." *Id.* at ¶ 35. Moreover, the Holbrooks "failed to present any evidence that Oxford Heights breached its duty to treat the ice at the entryway to [the Holbrooks'] condominium," because they "presented no evidence regarding when the ice had formed or how long it had been on the ground." *Id.* at ¶ 36.

{¶ 54} Similar to the letter in *Oxford Hts.*, the handbook relied upon by the Smiths is simply informational and lacks the requirements to form a contract between them and appellants. The handbook therefore does not establish a maintenance contract between the Smiths and appellants. Moreover, even if the handbook could be considered a contract between the parties, the Smiths failed to prove appellants breached it as the Smiths presented no evidence that the conditions were such as to invoke appellants' responsibility

to remove the ice upon which Terri slipped and fell.  As the trial court stated, the "handbook provides only for the removal of snow above two inches and do not place any requirements on [appellants] to remove an accumulation of ice.  The overwhelming evidence at trial is that Terri slipped and fell on ice rather than snow.  Thus, no breach of contract can be found in this case."

{¶ 55} Nevertheless, the Smiths assert that *Oxford Hts.* is distinguishable because Feldstein's testimony established that Ironwood had a duty to treat the common areas for ice and that Ironwood was aware of the water and ice issues in the area where Terri fell.  However, the evidence in *Oxford Hts.* also indicated that the association was aware ice was forming on the ground from water dripping from icicles that hung from the condominium's gutters.  The association's awareness was based upon the husband's multiple telephone calls to the association the prior winter.  *Oxford Hts.* is therefore not distinguishable and is applicable here.

{¶ 56} The Smiths' cross-assignment of error is overruled.

{¶ 57} In light of the foregoing, we find that the trial court's judgment in favor of appellants on the Smiths' breach-of-contract was proper but that the trial court's judgment in favor of the Smiths on their negligence claim was improper.  Accordingly, the trial court's July 20, 2021 Amended Final Judgment Entry granting judgment in favor of appellants on the Smiths' breach-of-contract claim is affirmed; however, the trial court's August 21, 2020 Final Judgment Entry and the court's July 20, 2021 Amended Final Judgment Entry granting judgment in favor of the Smiths on their negligence claim are reversed and judgment on that claim is hereby entered on behalf of appellants.

{¶ 58} Judgment affirmed in part and reversed in part.

S. POWELL and HENDRICKSON, JJ., concur.

- 17 -