[Cite as *Holmes v. Lakefront at W. Chester*, 2022-Ohio-99.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ROSALIND HOLMES, | : | |
| Appellant, | : | CASE NO. CA2021-05-046 |
| | : | O P I N I O N |
| - vs - | | 1/18/2022 |
| | : | |
| LAKEFRONT AT WEST CHESTER, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT AREA III
Case No. CVF2001041

Rosalind Holmes, pro se.

Greenberger & Brewer LLP, and Amy L. Higgins, for appellee.

**BYRNE, J.**

{¶1}   Rosalind Holmes appeals a decision of the Butler County Area III Court that dismissed her claims against her landlord, Lakefront at West Chester, LLC.  For the reasons described below, we affirm the area court's decision.

### I. Facts and Procedural History

{¶2}   In November 2020, Holmes filed a pro se complaint in the area court against Lakefront at West Chester, LLC ("Lakefront").  In December 2020, she filed a first amended

complaint. Holmes alleged that she rented an apartment from Lakefront and found a roach infestation upon moving in. She further alleged that she requested that Lakefront investigate her mailbox lock "suddenly being changed." Finally, she alleged that there was an "ongoing conspiracy" and "warrantless surveillance" being conducted against her by "the Federal Bureau of Investigation and others," including warrantless surveillance under the Foreign Intelligence Surveillance Act and Executive Order 12333. She claimed to have informed a Lakefront employee about this conspiracy. However, the Lakefront employee dismissed Holmes' concerns and failed to investigate. Holmes alleged that Lakefront was allowing people to enter her apartment "while [she] is sleeping, taking a shower etc. and while she is gone." The complaint also described several specific instances during which Holmes believed someone entered her apartment, including to spit in her bread and to steal her food.

{¶3} Holmes alleged the following causes of action: (1) failure to keep the premises in a fit and habitable condition (in violation of R.C. 5321.04[A][2]), (2) common law trespass, (3) breach of the implied warranty of habitability, and (4) landlord retaliation (in violation of R.C. 5321.02).

{¶4} Holmes had been depositing her rent with the area court in lieu of paying rent to Lakefront due to the roach infestation issue. Prior to trial, the area court held a hearing on the issue of the infestation and found that Lakefront had appropriately addressed the issue. Accordingly, the area court ordered all rent deposits to be released to Lakefront. Holmes did not object to the magistrate's decision.

{¶5} The case proceeded to a trial in March 2021. Initially, the magistrate noted that due to the prior hearing, Holmes' claims for failure to keep the premises in a fit and habitable condition and breach of the implied warranty of habitability were previously resolved and the court would hear no evidence on those claims. Holmes agreed and stated

that trespass and landlord retaliation were the only claims for which she intended to present evidence.

## II. Trial Testimony

### A. Rosalind Holmes' Testimony

{¶6} Holmes testified that in October 2020, as she was leaving her apartment, she found that her door key did not work, and she could not lock her door. She contacted Lakefront and the assistant property manager gave her a new key. Because her door key did not work upon her exiting the apartment, Holmes believed that a Lakefront employee had changed her lock while she was sleeping.

{¶7} Holmes testified that items were stolen from her apartment. This occurred either while she was sleeping or while she was gone from the apartment. She claimed that someone entered her apartment in October and November 2020, and dumped her makeup out of her makeup box. Holmes also testified that someone had taken her "bathroom cleaners" and that her vacuum cleaner disappeared from her apartment and later reappeared. Holmes testified that she took her vacuum cleaner to a repair shop, and the repair shop discovered debris in the vacuum that she believed was not hers, because her home was very clean.

{¶8} Holmes introduced three photographs into evidence. One depicted the makeup box, one depicted the vacuum cleaner with dust and debris emerging from the roller, and one was a picture of dust and debris. Presumably this was the same dust and debris from the vacuum cleaner. Holmes also introduced several emails that consisted of her communications with Lakefront employees concerning these issues.

### B. Jacqueline Keller's Testimony

{¶9} Holmes next called Jacqueline Keller. Keller was the regional manager of PLK Communities ("PLK"), which is the property management company that manages

Lakefront.  Keller recalled talking with Holmes about Holmes' belief that PLK was colluding with the FBI or a government entity.  Keller stated that she had never received a warrant concerning searching Holmes' apartment from any government agency.  Keller testified that she had never been approached by anyone working for the government asking questions about Holmes.

{¶10}  Keller testified that the only persons with access to the key to Holmes' apartment were the members of the property management team, and that the keys were held in a lockbox in an office protected by a security alarm.  Keller denied giving anyone access to Holmes' key and stated that the only time a PLK/Lakefront employee ever entered Holmes' apartment was pursuant to a work order submitted by Holmes.

### C. Jessica Banks' Testimony

{¶11}  Holmes next called Jessica Banks, the Lakefront property manager.  Banks testified that she had never received a search warrant from any government entity regarding Holmes' apartment.  Furthermore, no Lakefront employee had ever asked her to provide them with access to Holmes' apartment.  She denied receiving any information about Holmes from any outside party.

{¶12}  Banks testified that Holmes provided Lakefront with notice that she was vacating her apartment by September 4, 2020.  Banks then put Holmes on the notice-to-vacate list and rented her apartment to another future tenant.  When Holmes failed to vacate the apartment on September 4, Banks vaguely recalled calling Holmes and telling her she needed to leave the apartment.  However, after Banks consulted with her regional manager, the decision was made to allow Holmes to stay in the apartment.

{¶13}  Banks testified that she recalled there being an issue with Holmes' door key.  She received an email from Holmes about her door lock.  She was not in the office that day but asked her staff to take care of it.  Her staff put in a work order and maintenance workers

found that a pin was out of position. Banks assumed that the maintenance workers rekeyed the lock. Holmes' new key was then left with the assistant property manager in the leasing office. Banks also testified that there was an issue with Holmes' mailbox lock, but that this had to do with a screw coming loose and maintenance was able to fix the issue just by tightening the screw. Thus, the mailbox lock was not rekeyed.

{¶14} Concerning what happened with Holmes' door lock, Banks testified that on a quickset bolt, occasionally the locking pins would slip. She stated that this could be due to changes in the weather. She testified this kind of occurrence was not unusual. Lakefront had 296 units and Banks had been a property manager at other apartment complexes over the prior five years. She estimated that she had seen locking pins slip in this manner 25 to 30 times.

{¶15} Banks testified that no one from Lakefront went into Holmes' unit or gave a key to anyone else to enter Holmes' unit. Furthermore, she testified that no one from Lakefront used Holmes' vacuum cleaner or cleaning supplies, and that Lakefront had its own vacuum cleaner and cleaning supplies.

### III. Magistrate's and Area Judge's Decisions

{¶16} Following the hearing, the magistrate issued a decision recommending that Holmes' amended complaint be dismissed. Regarding the trespass claim, the magistrate found that Holmes failed to meet her burden to prove a common law trespass or that a violation of R.C. 5321.04(A)(8) occurred. The magistrate noted that Holmes had admitted that she never saw anyone from Lakefront in her apartment at any times when they were not invited, and that she could only assume that they entered the premises without her permission. The magistrate concluded that Holmes offered only conjecture that someone entered her apartment. The magistrate noted Banks' testimony that no one at Lakefront would have given anyone else access to Holmes' apartment. The magistrate also noted

Keller's and Bank's denials of having been involved in or assisted in any efforts to gain access to Holmes' apartment by the FBI.

{¶17} Regarding Holmes' claim for retaliation, the magistrate found that the only putative evidence of "retaliation" that was presented at the trial was testimony that Banks informed Holmes that she needed to leave the apartment. But Banks made this statement in the context of Holmes having told Lakefront she was vacating the premises by September 4 and Lakefront having re-rented the unit in reliance upon that notice. Other than this single conversation, Holmes presented no evidence of retaliation or any other improper attempt to evict Holmes. The magistrate noted that Lakefront in fact decided to allow Holmes to stay in the apartment even though Holmes had previously indicated she would move out, and that she was still living in the apartment at the time of trial. The magistrate found that Holmes had not met her burden to prove retaliation.

{¶18} The magistrate also briefly addressed those claims that it had already resolved and that Holmes agreed were not before the court at the trial. The magistrate reiterated that those claims were without merit.

{¶19} Finally, the magistrate noted that Holmes failed to present any evidence of damages resulting from any of Lakefront's actions.

{¶20} Holmes timely filed objections to the magistrate's decision. In April 2021, the area court judge overruled Holmes' objections and adopted the magistrate's decision as its own, thereby dismissing Holmes' amended complaint, including all her claims.

{¶21} Holmes appeals, raising two assignments of error.

### IV. Law and Analysis

{¶22} Assignment of Error No. 1:

{¶23} THE TRIAL COURT ABUSED ITS DISCRETION IN VIOLATION OF OHIO RULE OF EVIDENCE 602.

{¶24} Holmes contends that the area court abused its discretion by considering portions of Banks' testimony. She argues that this testimony was inadmissible pursuant to Evid.R. 602 because it was not based on Banks' personal knowledge. Lakefront argues that Holmes failed to object to the testimony, and, even if she had, the testimony was admissible.

## A. Standard of Review

{¶25} Decisions regarding the admission of evidence are within the sound discretion of the trial court and may not be reversed absent an abuse of discretion. *Proctor v. NJR Properties, L.L.C.*, 175 Ohio App.3d 378, 2008-Ohio-745, ¶ 14 (12th Dist.), citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 163 (1980). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## B. Analysis

{¶26} Holmes challenges Banks' testimony concerning Holmes' apartment door being rekeyed and the issues with the mailbox lock. Holmes argues that this testimony was not based on Banks' first-hand knowledge and that it was merely an assumption. However, Holmes did not object to this testimony at the time of trial. "The failure to object to evidence at the trial constitutes a waiver of any challenge* * *." *Wilhoite v. Kast*, 12th Dist. Warren No. CA2001-01-001, 2002 WL 4524, *9 (Dec. 31, 2001).

{¶27} Not only did Holmes not object to Banks' testimony at trial, she also did not challenge the testimony in her objections to the magistrate's decision. The first time that Holmes ever mentioned Evid.R. 602 was in her reply memorandum in support of her objections to the magistrate's decision. Moreover, Banks was Holmes' witness, and it was Holmes who first elicited the testimony she now challenges when she asked Banks whether she recalled there being an issue with the door key. We find that Holmes waived her Evid.R.

602 argument for purposes of appellate review, with the exception for a review for plain error. *Wilhoite* at *9; *In re Swader*, 12th Dist. Warren No. CA2000-04-036, 2001 WL 121084, *6-7 (Feb. 5, 2001), citing Evid.R. 103(A)(1); *State v. Crawford*, 60 Ohio App.3d 61, 62 (6th Dist.1989). Plain error in the civil context is "extremely rare" and this court must find that the error involves "exceptional circumstances" where the error "rises to the level of challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997).

{¶28} Nothing about the admission of Bank's testimony indicates the "exceptional circumstances" where this court would find an error challenging the legitimacy of the judicial process. This is because even if the challenged testimony was in fact inadmissible and even if Holmes had not waived her argument challenging that testimony, the admission of that testimony did not change the outcome in this case.[1]

{¶29} The primary basis for the court's decision on the trespass claim was that Holmes failed to meet her burden of proof to demonstrate a trespass occurred. Indeed, the only evidence offered by Holmes with respect to trespass was her entirely speculative testimony about Lakefront entering her apartment or assisting an unknown governmental agency in entering her apartment. The only other "evidence" of trespass submitted by Holmes were three emails in which Holmes communicated with Lakefront concerning the lock or infestation issues, and three photographs depicting an empty makeup box, a vacuum cleaner clogged with some dust or debris, and a picture of some dust or debris. None of this evidence proved Holmes' trespass claim.

{¶30} The court did not need to rely on, much less consider, Banks' testimony

---

1. Any putative error here would also qualify as harmless error. An error is harmless in the civil context if it "does not affect [the] substantial rights of the complaining party, or the court's action is not inconsistent with substantial justice." *O'Brien*, 63 Ohio St.2d at 164, citing Civ.R. 61. Accord *In re P.R.P.*, 12th Dist. Butler No. CA2017-02-026, 2018-Ohio-216, ¶ 39-41.

concerning what happened with the locks to find that Holmes failed to meet her burden of proof. Accordingly, Holmes has not demonstrated the "exceptional circumstances" necessary to demonstrate an error that challenges the legitimacy of the judicial process. Therefore, she has not shown plain error and we overrule Holmes' first assignment of error.

{¶31} Assignment of Error No. 2:

{¶32} THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶33} Holmes argues that the trial court's judgment in favor of Lakefront was not supported by the weight of the evidence.

### C. Standard of Review

{¶34} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Skyward Learning Servs., Inc. v. Gray*, 12th Dist. Butler No. CA2019-08-140, 2020-Ohio-1182, ¶ 10; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. When considering a challenge to the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20; *Carson v. Duff*, 12th Dist. Fayette Nos. CA2017-03-005 and CA2017-03-007, 2017-Ohio-8199, ¶ 11.

### D. Analysis

{¶35} Holmes' argument in support of this assignment of error is difficult to understand. What can be discerned is that she is arguing that *Lakefront* failed to present credible evidence that it did not trespass on her property and that *Lakefront* did not prove that it did not retaliate against her based on telling her she needed to leave the apartment.

These arguments fundamentally misunderstand the applicable burden of proof. [2]  At trial the burden was on *Holmes* to prove a trespass and retaliation, not on Lakefront to disprove a trespass and retaliation.  As described in response to the first assignment of error, Holmes failed to submit any evidence of a trespass other than her own unfounded and uncorroborated speculation.  Holmes also offered no evidence to establish that any retaliation occurred.  To the contrary, the evidence indicated that Lakefront allowed her to remain in the apartment despite her notice to vacate.

{¶36}    To the extent Holmes vaguely references issues directed toward habitability in her appellate brief, those issues are not properly before us because Holmes did not object to the magistrate's decision finding that Holmes failed to prove her habitability claims. Holmes specifically agreed with the magistrate that those claims had already been ruled upon and she registered no objection to the contrary.

{¶37}  The area court did not lose its way in finding for Lakefront and dismissing Holmes' amended complaint.  We overrule Holmes' second assignment of error.

{¶38}  Judgment affirmed.


PIPER, P.J., and M. POWELL, J., concur.

---

2. Holmes' arguments in both the first and second assignment of error suggest that she believes that Lakefront had the burden of proof in this case.  Holmes is mistaken.  But while Holmes is mistaken, litigants who proceed pro se are held to the same standard as those who are represented by counsel.  *Stiles v. Hayes*, 12th Dist. Madison No. CA2015-01-007, 2015-Ohio-4141, ¶ 18.  As a result, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that she remains subject to the same rules and procedures to which represented litigants are bound.  *Id.*  "Pro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure."  *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21.