[Cite as *Wagoner v. Wagoner*, 2024-Ohio-1000.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| BILLY RAY WAGONER II, | : | CASE NOS. CA2023-06-048 |
| Appellee, | : | CA2023-11-101 |
|  | : | O P I N I O N |
| - vs - |  | 3/18/2024 |
|  | : |  |
| JAMIE LEE WAGONER nka DENICOLA, | : |  |
|  | : |  |
| Appellant. | : |  |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 20DR42341

Rittgers Rittgers & Nakajima, and Juliette Gaffney Dame, for appellee.

Mitchell W. Allen, for appellant.


**BYRNE, J.**

{¶ 1} Appellant, Jamie Lee Wagoner, now known as Jamie Lee Denicola ("Mother"), appeals from the decision of the Warren County Court of Common Pleas, Domestic Relations Division, which denied Mother's motion for contempt against Appellee Billy Ray Wagoner II ("Father") and granted Father's motion to modify the parties' shared

parenting plan.  For the reasons discussed below, we affirm.

## I. Factual and Procedural Background

{¶ 2}   Mother and Father married in 2008.  Two children were born of the marriage: "Holly," born in 2009, and "Sarah," born in 2018.[1]

{¶ 3}   In December 2020, Mother and Father jointly petitioned the domestic relations court for a dissolution of their marriage.  Simultaneous with their petition, Mother and Father jointly submitted a shared parenting *plan*.  (Note that this appeal turns in part on the distinction between a shared parenting *plan* and a shared parenting **decree**.  To aid the reader's comprehension, we will italicize "*plan*" and bold "**decree**.")

{¶ 4}   In February 2021, the domestic relations court issued the parties a decree of dissolution.  The court also issued a shared parenting **decree**.  The shared parenting **decree** incorporated the parties' shared parenting *plan*, as required by R.C. 3109.04(D)(1)(d) ("If a court approves a shared parenting plan under division (D)(1)(a)(i), (ii), or (iii) of this section, the approved plan shall be incorporated into a final shared parenting decree granting the parents the shared parenting of the children.").

{¶ 5}   The shared parenting *plan*, as incorporated into the **decree**, named Mother and Father as the children's legal custodians.  The *plan* designated Father as residential parent for school purposes.  The *plan* set forth the parenting time schedule, which was a rotating two-week schedule.  According to Mother's brief, the parties interpreted this schedule as providing both parents with equal parenting time during week one, and Father with more parenting time than Mother in week two.

---

1. We refer to the children using pseudonyms for purposes of protecting the minor children's privacy and to improve the readability of this opinion.  *See In re A.P.*, 12th Dist. Warren No. CA2022-01-002, 2022-Ohio-3181, ¶ 2, fn.1.

**A. Post-Decree Motions**

{¶ 6} In January 2022, Mother moved for contempt of court against Father. Relevant to this appeal, Mother argued that Father was denying her parenting time with Holly. Mother also stated that she was concerned for Holly's mental status and that Father did not believe in Holly's medical diagnosis or believe that she required medication.

{¶ 7} The next month, February 2022, Father moved the domestic relations court to terminate the shared parenting *plan*, or in the alternative, to modify the shared parenting *plan*.[2] In his motion, Father stated that Holly had exhibited signs of distress, anxiety, and depression. Father also stated that Mother had Holly medicated and admitted to a facility. Father claimed that Holly had expressed a desire not to return to Mother's residence for parenting time and that Mother had resorted to contacting the police to force Holly to go with Mother during Mother's parenting time. Father alleged that the "living situation" between Holly and Mother had become "volatile and untenable" and was negatively impacting Holly's mental health. Father also alleged that Mother had begun cohabitating with a man who was "verbally and physically forceful" with Holly.

{¶ 8} Father requested that he be named Holly's legal custodian and residential parent. Father additionally requested that he be granted decision-making authority for Holly's medical treatment. Father explained that the shared parenting *plan* required Mother and Father to consult with one another on all non-emergency medical treatment prior to engaging in that treatment. Father alleged that—contrary to the terms of the shared parenting *plan*— Mother was making medical treatment decisions for Holly and then informing Father of those decisions after-the-fact.

---

2. Father also moved the court to appoint a guardian ad litem and a motion for contempt. Those motions are not at issue in this appeal.

**B. The Hearing**

{¶ 9} The matter proceeded to a hearing before a magistrate. The majority of the evidence adduced at the hearing is not at issue in this appeal. Nor have the magistrate's factual findings been challenged in this appeal. For context, we will summarize some of the magistrate's factual findings, and also refer to some specific testimony by Father.

**1. Mother's Testimony**

{¶ 10} Mother testified that Holly has struggled with depression, ADHD, and anxiety and that she was cutting herself. Mother stated that she and Father discussed putting Holly in a hospitalization program for 10 days due to these mental health issues. Holly attended this program in December 2021. The last time Holly cut herself was in December 2021, shortly after the program ended.

{¶ 11} Mother testified that Father began denying her parenting time with Holly in mid-January 2022. Mother admitted that Father did not deny her parenting time with their younger daughter, Sarah.

{¶ 12} Mother stated that there are issues between herself and Holly. When Father began denying Mother's parenting time, Mother arranged for family counseling. Father was compliant with counseling and attended and made sure Holly attended. They attended six counseling sessions, but the sessions were unsuccessful in resolving the issues between Mother and Holly.

**2. Father's Testimony**

{¶ 13} Father testified that he always makes Holly available to Mother, but that Holly does not want to spend time with Mother. When Holly first stopped going to her parenting time with Mother, it was because Holly made the choice not to go. Father encouraged Holly to go and stated that he has done everything he can do to help because

- 4 -

he wants Holly to have a relationship with her Mother.

{¶ 14} Father stated the following during his testimony regarding Holly refusing to go with Mother during her parenting time:

> Attorney: So, the end of January, did you continue to force [Holly] to go see her mother?
>
> Father: No, I didn't force her anymore.
>
> Attorney: Ok. Did you continue to take [Sarah] over to see her mother?
>
> Father: Yes, uh, [Sarah], yes.
>
> Attorney: So, how did, how did [Holly's] time stop with her mother?
>
> Father: Um, [Mother], um, when she came to the house, um, I talked to her about [Holly] not going with her. Um, I said if [Holly] wants to go, she's welcome to. I'm not forcing her to. This went on for months. Um, with the same, same outcome. [Holly] did not want to go with her. Uh, the door was always open. Uh, she didn't even wanna come outside and acknowledge her mother. But I made her come outside, say hi to her. Um –
>
> Attorney: How, how would [Holly] react to seeing her mother? Without saying what she said, how would she respond to her mother?
>
> Father: Um, just, I'm not going dad, I'm not going with her.

{¶ 15} Father stated that Mother would appear with the police when it was time to pick up Holly and that this would upset Holly and Sarah. Father did not know what to do. He and Mother discussed going to family counseling and he agreed to go, but the counseling sessions were not helpful.

{¶ 16} Father testified that, while this dispute over Holly was unresolved, Mother and Father worked out an understanding that Mother and Holly would have lunch together. Father would drop Holly off at a restaurant to eat with Mother and then pick her

up. But on one occasion, there was a confrontation between Holly and Mother in the restaurant parking lot. Mother was yelling and cursing at Holly and became enraged at Father. They stopped the lunches in July 2022 after, Father claimed, Mother stated, "if Holly is going to act like that, stop the lunches."

### C. The Magistrate's Decision

{¶ 17} The magistrate issued a written decision in December 2022. Regarding Mother's contempt motion, and her allegation that Father was denying her parenting time, the magistrate noted as follows:

> Based on all the evidence before the Court, Mother's request to find Father in contempt for denying her parenting time is DENIED. This Magistrate does not condone Father not abiding by the Court order. However, based on the specific facts of this case, Father has reasonable cause to believe that [Holly] seeing Mother according to the current *Plan* is not in [Holly's] best interest, and could cause her mental health to deteriorate. Father has worked with Mother in many ways, whether he wanted to or not: hospitalization program; medication; family counseling; and taking [Holly] to lunches with Mother. In the future, Father should seek immediate relief from the Court as opposed to not abiding by a Court order.

{¶ 18} Regarding Father's motion to terminate or modify the shared parenting *plan*, the magistrate indicated that he was analyzing the issue under R.C. 3109.04(E)(2)(b), which required that any modification of a shared parenting *plan* be in the child's best interest. The magistrate then reviewed the best-interest factors set forth under R.C. 3109.04(F)(1). Based on a review of those best-interest factors, the magistrate determined that a modification to the shared parenting *plan* was appropriate.

{¶ 19} While the full details of the magistrate's recommended modifications to the shared parenting *plan* are not necessary for purposes of this appeal, we note that the magistrate recommended significantly reducing Mother's parenting time with Holly. The magistrate recommended reducing and modifying Mother's non-holiday parenting time to

three hours, every other week, in a supervised, public setting. The magistrate also recommended that Father have final decision-making authority as to Holly's medical decisions. The magistrate did not recommend any changes to legal custodian or residential parent status as set forth in the shared parenting **decree**.

### D. Mother's Objections

{¶ 20} Mother objected to the magistrate's decision, raising nine objections. Relevant to this appeal, Mother argued that the magistrate erred by modifying the shared parenting *plan*. Mother wrote,

> *No Finding of Change in Circumstances*—Father requested that Shared Parenting be terminated as to the parties' eldest daughter, [Holly] (12 years old at the time of the decision, now 13), but that it continue for their youngest daughter, [Sarah] (4 years old) or in the alternative that the terms of the Shared Parenting *Plan* be modified as relate to [Holly]. The Magistrate found that it was not in [Holly's] best interest to terminate the *plan*. *Magistrate's Decision*, p.10. However, the Magistrate cited no evidence of and made no analysis of change in circumstances which he would have had to address first in order to get to the best interests question regarding termination.

{¶ 21} Mother also objected to the Magistrate's decision to not hold Father in contempt of court for failing to honor Mother's parenting time. Mother highlighted Father's testimony that he would not force Holly to go with Mother. Mother pointed out that the magistrate did not "condone" Father's actions but found them "reasonable" based on his belief that forcing Holly to have parenting time with Mother was detrimental to Holly's mental health. Mother argued that the conclusion that Holly's mental health could be affected by parenting time with Mother was not based on evidence presented at the hearing. Mother argued that no expert witnesses testified at trial concerning their opinion as to the effect of Mother's parenting time on Holly's mental health.

### E.  Ruling on Objections

{¶ 22}  The domestic relations court overruled Mother's objections.  With regard to Father's motion to modify the shared parenting *plan*, the domestic relations court observed that the magistrate used the correct legal standard—that is, the children's best interest.  With regard to Mother's contempt motion against Father, the court agreed with the magistrate's conclusion that Father should not be found in contempt.  The court stated:

> The issue is not whether Father allowed [Holly] to make that decision [to not go with Mother], but instead whether Father actually took affirmative steps to prevent [Holly] from going. If Mother takes issue with Father letting [Holly] make certain decisions, her remedy is to file a motion to change residential parent status, and prove that Father is not acting in [Holly]'s best interest. However, if Mother wants Father to be held in contempt and potentially jailed for interfering with her parenting time, she must prove Father did or said things that caused [Holly] not to go *solely because he said so.*
>
> The Court has no evidence of Father preventing [Holly] from going with [Mother].  Accordingly, the Magistrate's Decision was correct.

(Emphasis sic.)

{¶ 23}  Mother has appealed, raising two assignments of error.

## II.  Law and Analysis

### A.  Motion for Contempt

{¶ 24}  Mother's first assignment of error states:

> THE TRIAL COURT ERRED IN FAILING TO FIND APPELLEE IN CONTEMPT OF COURT AS A RESULT OF ITS HAVING FAILED TO APPLY THE CORRECT RULE OF LAW.

{¶ 25}  Mother argues that the domestic relations court erred in failing to apply the proper legal standard to its determination of whether Father should be held in contempt

of court for his "refusal to send [Holly] for her parenting time with her mother."

## 1. Standard of Review

{¶ 26} As an initial matter, the parties dispute the appropriate standard of review. Father argues that we apply an abuse-of-discretion standard to the review of the denial of a motion for contempt. Mother contends that we should apply a de novo review because her assignment of error alleges that the trial court applied the wrong legal standard, making this a legal issue that we review de novo.

{¶ 27} In this case, both parties are correct. Purely legal questions are reviewed de novo. *See Lykins v. Lykins*, 12th Dist. Clermont No. CA2022-07-034, 2023-Ohio-4469, ¶ 66. However, the decision to grant or deny a motion for contempt is a matter left to the discretion of the domestic relations court and therefore reviewed for an abuse of discretion. *In re C.L.W.*, 12th Dist. Clermont No. CA2021-05-013, 2022-Ohio-1273, ¶ 35. To the extent Mother's assignment of error raises a distinct legal issue, we review that issue de novo. To the extent that Mother challenges the discretionary or factual basis for denying the motion for contempt, we will review for an abuse of discretion. To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## 2. Applicable Law

{¶ 28} Mother argues that both the magistrate and the domestic relations court incorrectly stated the law in their respective decisions and should have found Father in contempt. Mother argues that the domestic relations court failed to follow our court's precedent on the issue of contempt relating to compliance with the other parent's parenting time.

{¶ 29} Disobedience to court orders may be punished by contempt. R.C.

2705.02(A). In *Ware v. Ware*, 12th Dist. Warren No. CA2001-10-089, 2002 WL 336957, *2 (Mar. 4, 2002), in the context of a motion for contempt for violation of a child visitation order, this court held that when a court establishes a visitation schedule concerning the parties' minor children, in the absence of proof showing that visitation with the non-custodial parent would cause physical or mental harm to the children, or a showing of some justification for preventing visitation, the custodial parent must do more than merely encourage the minor children to visit the non-custodial parent. We applied the *Ware* standard again in a recent case in *In re C.L.W.*, 2022-Ohio-1273, which involved parenting time in the context of a shared parenting *plan*. In fact, we have applied the *Ware* standard in the shared parenting context in multiple cases. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 17-21; *Koehler v. Koehler*, 12th Dist. Brown Nos. CA2017-12-016 and CA2017-12-017, 2018-Ohio-4933, ¶ 42; *Carmosino v. Carmosino*, 12th Dist. Clermont No. CA2018-01-002, 2018-Ohio-3010, ¶ 16, fn.1.

{¶ 30} The magistrate in this case stated the following concerning its decision on Mother's motion for contempt:

> Based on all the evidence before the Court, Mother's request to find Father in contempt for denying her parenting time is DENIED. This Magistrate does not condone Father not abiding by the Court order. However, based on the specific facts of this case, Father has reasonable cause to believe that [Holly] seeing Mother according to the current *Plan* is not in [Holly's] best interest, and could cause her mental health to deteriorate. Father has worked with Mother in many ways, whether he wanted to or not: hospitalization program; medication; family counseling; and taking [Holly] to lunches with Mother. In the future, Father should seek immediate relief from the Court as opposed to not abiding by a Court order.

{¶ 31} While the magistrate did not directly cite the contempt standard set forth in *Ware* and *C.L.W.*, the magistrate's analysis appears to apply that standard. That is,

- 10 -

pursuant to *Ware* and *C.L.W.*, we explained that to avoid a contempt finding a parent must do more than merely encourage the minor child to spend parenting time with the other parent, *except* where there is proof "showing that visitation with the non-custodial parent would cause physical or mental harm to the children." *Ware*, 2002 WL 336957 at *2. Here, the magistrate declined to hold Father in contempt for his failure to do more than merely encourage Holly to spend parenting time with Mother because it concluded that Father had "reasonable cause to believe that [Holly] seeing Mother * * * is not in [Holly's] best interest, and could cause her mental health to deteriorate." In other words, the magistrate concluded that there was "proof showing that visitation with the non-custodial parent would cause physical or mental harm" to Holly. *Ware* at *2. Notably, while Mother challenged the magistrate's factual finding in her objections (on the basis of a lack of expert testimony), she has not raised that issue in this appeal.

{¶ 32} Reviewing the issue de novo, we therefore find that the magistrate applied the appropriate legal standard, albeit without citation to *Ware* and *C.L.W.* We likewise find no abuse of discretion in the magistrate's decision not to hold Father in contempt.

{¶ 33} With regard to the domestic relations court's decision overruling Mother's objections to the magistrate's decision and adopting that decision, the domestic relations court stated the following:

> The issue is not whether Father allowed [Holly] to make that decision [to not go with Mother], but instead whether Father actually took affirmative steps to prevent [Holly] from going.
>
> * * *
>
> The Court has no evidence of Father preventing [Holly] from going with [Mother]. Accordingly, the Magistrate's Decision was correct.

{¶ 34} The domestic relations court's statement is inconsistent with the standard

stated in *Ware* and *C.L.W.* However, the domestic relations court adopted the magistrate's decision, thereby incorporating the magistrate's analysis, including the factual basis of that decision. While the domestic relations court's rationale for overruling Mother's objections was erroneous, ultimately this error was harmless because the magistrate correctly decided the case based on the appropriate standard and Mother has not challenged any factual basis underlying that decision. "An error is harmless in the civil context if it 'does not affect [the] substantial rights of the complaining party, or the court's action is not inconsistent with substantial justice.'" *Holmes v. Lakefront at West Chester*, 12th Dist. Butler No. CA2021-05-046, 2022-Ohio-99, ¶ 28, fn.1, quoting *O'Brien v. Angley*, 63 Ohio St.2d 159, 164 (1980). *Accord Halcomb v. Greenwood*, 12th Dist. Clermont Nos. CA2018-03-008, CA2018-03-010, CA2018-03-012, and CA2018-03-013, 2019-Ohio-194, ¶ 61. We overrule Mother's first assignment of error.

### B. Proper Standard for Modifying Shared Parenting *Plan*

{¶ 35} Mother's second assignment of error states:

THE TRIAL COURT ERRED IN MODIFYING AN EXISTING SHARED PARENTING **DECREE** AND *PLAN* WITHOUT FIRST MAKING A FINDING OF CHANGE IN CIRCUMSTANCES.

{¶ 36} Mother argues that a modification of a shared parenting **decree** first requires a finding of a change of circumstances before finding that a modification is in the best interest of the child. Mother cites R.C. 3109.04(E)(1)(a) as the basis for her claim that the domestic relations court's modification of the shared parenting **decree** in this case required a change-of-circumstance finding. That statute provides, in relevant part:

The court shall not modify a prior **decree** allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior **decree** or that were unknown to the court at the time of the prior **decree**, that a change has occurred in the circumstances of

- 12 -

the child, the child's residential parent, or either of the parents subject to a shared parenting **decree**, and that the modification is necessary to serve the best interest of the child.

{¶ 37} However, we note that the magistrate did not cite R.C. 3109.04(E)(1)(a) as the basis for its decision to modify the parties' shared parenting *plan*; instead, the magistrate cited R.C. 3109.04(E)(2)(b). That statute provides:

The court may modify the terms of the *plan* for shared parenting approved by the court and incorporated by it into the shared parenting **decree** upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the **decree**. Modifications under this division may be made at any time. The court shall not make any modification to the *plan* under this division, unless the modification is in the best interest of the children.

{¶ 38} Thus, a modification to a shared parenting *plan* under R.C. 3109.04(E)(2)(b) only requires a best-interest finding in support of modification and does not require a finding of a change of circumstances, as is the case with a modification to a shared parenting **decree** under R.C. 3109.04(E)(1)(a).

{¶ 39} Mother's argument is difficult to follow because in her brief, she simultaneously refers to modification of shared parenting **decrees** and shared parenting *plans*. For instance, she argues that "a *shared parenting decree* requires first a finding of change of circumstances and then a finding of best interest." (Emphasis added.) But then she states that the court improperly considered "[Father's] request for modifications to the *Shared Parenting Plan*, finding that modifications were in the best interest of the minor children and then going on to make substantial modifications to the existing *Shared Parenting Plan*, as detailed above." (Emphasis added.)

{¶ 40} To add further confusion to the issue, Mother cites R.C. 3109.04(E)(2)(b) as empowering "the court to make any modifications to the Shared Parenting *Plan* that it

- 13 -

finds to be in the best interest of the child." However, Mother makes no reference to the lack of a change-of-circumstance finding in R.C. 3109.04(E)(2)(b).

{¶ 41} There is a statutory distinction between a shared parenting **decree** and a shared parenting *plan*. The Ohio Supreme Court has explained:

> Within the custody statute, a "*plan*" is statutorily different from a "**decree**" or an "order." A shared-parenting order is issued by a court when it allocates the parental rights and responsibilities for a child. R.C. 3109.04(A)(2). Similarly, a shared-parenting **decree** grants the parents shared parenting of a child. R.C. 3109.04(D)(1)(d). An order or **decree** is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.
>
> However, a *plan* includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A *plan* details the implementation of the court's shared-parenting order. For example, a shared-parenting *plan* must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.
>
> A *plan* is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or **decree**. Therefore, the designation of residential parent or legal custodian cannot be a term of shared-parenting *plan*, and thus cannot be modified pursuant to R.C. 3109.04(E)(2)(b).

*Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 29-31.

{¶ 42} Thus, a shared parenting **decree** allocates "parental rights and responsibilities," i.e., the designation of the residential parent and legal custodian. *Fisher* at ¶ 26. R.C. 3109.04(E)(1)(a) "controls when a court modifies an order designating the residential parent and legal custodian." *Id.* Designation of the residential parent and legal custodian however cannot be modified under R.C. 3109.04(E)(2)(b), "which allows only for the modification of the terms of a shared-parenting *plan*." *Id.* at ¶ 27.

{¶ 43} In Father's motion to terminate shared parenting, or alternatively, to modify

- 14 -

the shared parenting *plan*, he requested to be named Holly's legal custodian and residential parent. However, the magistrate's decision did not recommend any modifications to residential parent or legal custodian status. Instead, the magistrate's decision recommended modifications relevant to Holly's care, such as the parenting time schedule and medical care. The domestic relations court's decision affirmed and adopted the magistrate's recommendation. Mother thus retained her status as legal custodian of Holly following the magistrate's and domestic relations court's decisions, and all the parental rights attendant to that status.

{¶ 44} Accordingly, the magistrate correctly applied R.C. 3109.04(E)(2)(b) to its decision to modify the shared parenting *plan*, which only required a finding that a modification was in the children's best interest. We note that Mother has not challenged any aspect of the best-interest findings underpinning that decision.

{¶ 45} For these reasons, we find no merit to Mother's arguments. We overrule Mother's second assignment of error.

{¶ 46} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

- 15 -